299 P.2d 776

**W. D. CURTIS, Plaintiff-Appellee,**

v.

**SCHWARTZMAN PACKING COMPANY, a corporation, and Willie Gutierrez, Defendants-Appellants.**

No. 5976.

Supreme Court of New Mexico.

July 24, 1956.

McAtee & Toulouse, Wm. C. Marchiondo, Albuquerque, for appellants.

W. W. Atkinson, Albuquerque, for appellee.

KIKER, Justice.

The plaintiff, W. D. Curtis, was attempting to pass a Schwartzman Packing Company truck. The truck made a left turn and the car and truck collided. Plaintiff brought suit for $6,000 against Schwartzman Packing Company and its truck driver.

The complaint alleged the collision was due to the negligence of defendant's truck driver failing to signal for a left turn; failing to make such a signal continuously in the manner provided by law; failing to ascertain whether the turn could be safely made; and turning left while plaintiff was attempting to pass defendant's truck, whereupon the vehicles collided; also that the defendant's truck was not equipped with a rear vision mirror.

The items of damage having been attacked in several respects, we set out in full Paragraph V of plaintiff's complaint:

"As a proximate result of the negligence of the defendants, plaintiff has been damaged as follows:

"(a) The said passenger automobile of plaintiff was damaged in the amount of $450.00.

"(b) Plaintiff lost the use of his car, to his damage in the amount of $200.00.

"(c) Plaintiff suffered numerous and severe wounds, contusions, bruises, lacerations, abrasions, shock, and other painful and serious injuries, and experienced great physical and mental pain and anguish, and has required medical attention and treatment and will require further such medical attention and treatment, the total cost of which will be approximately $250.00.

"(d) Plaintiff was disabled and incapacitated, and was thereby prevented from transacting and attending to his business, to his damage in the amount of $2,500.00.

"Wherefore, plaintiff prays judgment against the defendants, and each of them, in the amount of $6,000.00, together with costs, and for such other and further relief as he is entitled in the premises."

Defendants' answer denied all but formal allegations and set up as affirmative defenses the following: (1) That the plaintiff was negligent in that he operated his vehicle at an unlawful rate of speed, recklessly and without due care or caution for the safety of others, disregarded a left-hand turn signal by the truck driver, and attempted to pass the truck without giving an audible horn signal; (2) that the plaintiff violated certain statutory provisions concerning rules of the road; (3) that the plaintiff was contributorily negligent; (4) that the accident waas unavoidable; and (5) that plaintiff assumed the risk.

The issues were tried to a jury which returned a verdict in the amount of $3,000 for plaintiff. Defendants appeal from the judgment thereon.

Appellants have presented in the brief seventeen assignments of error which are argued under six points.

The first of these points states: "Defendants were entitled to a directed verdict as contributory negligence was established as a matter of law." Under this point

defendant relies upon his assignments of error 8, 9 and 16.

Assignment of error No. 8 asserts error in the refusal of the court to direct a verdict upon the motion of defendant at the close of plaintiff's evidence. Assignments of error Nos. 9 and 16 are in substance the same as assignment No. 8.

The motion for directed verdict was in the following language, quoted in the assignment of error:

"We have a motion at this time requesting the Court to direct a verdict for and on behalf of the defendants and state our grounds as follows: First, that the plaintiff has failed, substantially, to prove that he was free of negligence, sole negligence of the defendant's agent; and, we feel, as a matter of law, it is quite obvious there is contributory negligence that the Court should rule upon, that the man is contributorily negligent, as a matter of law. Therefore, we ask that the Court at this particular time to direct a verdict."

The motion, in the language just quoted, was properly overruled by the court.

■ This court has held repeatedly that the question whether a plaintiff is guilty of contributory negligence is for the determination of the jury. This court said in Williams v. Haas, 52 N.M. 9, 189 P.2d 632, 635, that even if a negligent violation of statute on the part of plaintiff is shown, "still these facts do not resolve the decisive inquiry of causation. After all contributory negligence is not established until causal relationship between it and the injury is shown. * * * He was entitled to have it [trial court and jury] say whether any violation shown by him of statutory regulations or the common law of due care was a proximately contributing factor in bringing about his injury."

■ No burden rested upon plaintiff to show that he was free from negligence.

Point One is ruled against appellants.

Under appellants' Point Two it is claimed that the court erred in admitting the "Blue Book" to establish the value of plaintiff's car, and in admitting testimony as to total loss, rental value, and loss of use of car, and in submitting its instruction No. 12; and that the admission of such testimony and the giving of said instruction created a situation that could have had no other effect than to confuse the jury. Defendants-appellants objected to some of the testimony listed in the statement of the point, but as to some of the other testimony, defendants consented thereto and asked many questions.

The first attack is upon the admission of the "Blue Book". It is clear that, in the opinion of plaintiff, who had spent many years of his active life as an automobile mechanic, his automobile, after the collision, could not be placed in such state of

repair as would restore it to its former condition. He therefore sold it for salvage for $100. The record shows no contest as to this amount being a reasonable salvage value for the automobile. The complaint alleged damage to the automobile to the extent of $450. The determination as to whether the car had no value except for salvage after the collision was a matter for the jury. It was therefore necessary that testimony of some kind should be given to the jury as to the value of the car before the collision. For the purpose of doing this, the "Blue Book" was admitted in evidence, over the objection of defendants-appellants.

■ This book, generally used in the automobile field as a price list and guide to used car values in designated territories, is distributed widely to those engaged in the purchase and sale, and the insuring and financing of new and used automobiles, and it is generally relied upon by dealers in the trade. This is a matter of common knowledge and the admissibility of such general market reports and price lists as this was long ago recognized in New Mexico as an exception to the hearsay rule. California Sugar & White Pine Co. v. Whitmer Jackson & Co., 33 N.M. 117, 263 P. 504. Compare Fulwiler v. Traders & General Ins. Co., 59 N.M. 366, 285 P.2d 140.

Plaintiff's allegation in his complaint as to damage to his car was a general allegation which would admit proof of either the loss of the value of the car, except for salvage value, or the cost of repairs and loss of use of the car while being repaired. There was evidence in the record upon which the jury could have found total loss, less salvage, or, if the damage to the car was reparable, cost on account of repairs and the value of the loss of use of the car. Restatement of Torts, Sec. 928; 5 Am.Jur. 905, § 745, "Automobiles"; Tremeroli v. Austin Trailer Equipment Co., 102 Cal.App. 2d 464, 227 P.2d 923; Johnson v. Central Aviation Corp., 103 Cal.App.2d 102, 229 P.2d 114.

The instruction complained of was intended by the court to inform the jury, if it should be found that plaintiff was entitled to recover from defendants for the damage to plaintiff's car, and if the car after the collision had no value except for salvage, in that event plaintiff would be entitled to the difference between the reasonable market value of the car immediately before the collision and its reasonable value immediately after the collision, but that if it should be found that the plaintiff's car could have been restored to its former condition by repairs, and if the jury should find for plaintiff, then his damages should be in such amount as would afford the plaintiff the reasonable cost of repairs and a reasonable amount for the loss of use of the car during the time necessary to make the repairs.

■ There is nothing about the instruction which could have been confusing to the jury as appellants insist; and there

is nothing about it which could have led the jury to believe that it might award the plaintiff damages for practically total loss and also for loss of any other amount. We think the attack made upon the instruction is not well taken. Industrial Supply Co. v. Goen, 58 N.M. 738, 276 P.2d 509.

Point Three of defendants' brief raises the following: (1) That the court erred in instructing that the plaintiff would be entitled to compensation for diminution of future earning capacity as there was no substantial evidence to justify such an instruction; (2) that it was error to instruct concerning the plaintiff's life expectancy based on mortality tables as there was no substantial evidence of permanent injury; and (3) that these instructions created an issue not alleged in the pleadings or justified by the proof.

We agree with defendants that the court fell into error in giving the instructions complained of in the statement of Point Three.

The testimony offered in support of the propositions that the plaintiff was permanently injured and that there would be consequent diminution of his earnings throughout the remainder of his life is that of the plaintiff and of Dr. Schultz, plaintiff's witness.

The plaintiff testified that at the time of trial he suffered pain in the lower part of his back; that after long hours of sitting or driving, his leg would become numb, he tended to drag his leg as he walked, and he had recently discovered that the heel of his shoe would wear off on the side, throwing his left foot sideways; that he would feel pain when climbing up or down stairs, more noticeably when going down, but that this was not exactly a pain, but a pulling sensation, a tightness; that he could not sleep comfortably and was compelled to sleep in one position, in which he would turn on his left side on a pillow and stretch his left leg and foot in a straight position, but that his leg would then become numb and his back would pain him.

There is nothing in the testimony of plaintiff as given in the trial court which does more than describe a condition existing at the time. Plaintiff is an uneducated man and could not, of course, speak as to the future.

Plaintiff's testimony shows that he suffered the injury complained of on November 22, 1953. On November 23, 1953, Dr. Schultz began treating plaintiff, who then complained of pain in the lower part of his back and in his left lower ribs and of some pain in his left shoulder and the left side of his neck. The doctor caused X-ray films to be made of plaintiff's back, but they showed no injury such as can be discovered by the use of the X-ray.

When he was discharged on March 4, 1954, he stated to the doctor that he had never felt better in his life. He was engaged in operating a merchant police busi-

ness, and had lost considerable time from his work during part of the time he was under treatment.

The trial of this case came on in about 14 months after plaintiff's injury and during that period he had been in two other car accidents. He stated, however, that he was not hurt in either of these accidents, though his statement was that he was considerably shaken up in one of them and suffered some pain for a day or two.

Dr. Schultz testified in the case as to the beginning of his treatment of plaintiff; that he discharged him on March 4, 1954, as cured; and that plaintiff had stated that he felt particularly well when he was discharged. He testified that he examined plaintiff again a few days before trial began; that this examination was for the purpose of enabling him to testify as a witness at the trial.

The doctor testified as to an atrophy of the calf of plaintiff's left leg, saying that he had measured both legs in November 1953 and again at the time of his latest examination, and found atrophy of the calf of the left leg to the extent of ¾ inch.

All other testimony of the doctor, as will be seen, was based upon statements made to him by plaintiff and upon answers to questions asked by him.

The doctor testified that plaintiff had some diminution of sensation along the outside of his left leg and foot and that sensory loss, together with the atrophy, is indicative of some type of nerve root pressure in the back; that the most common cause of such pressure would be a ruptured disc in the spinal column; that "inasmuch as you don't see the disc on X-ray, you can't tell anything about a ruptured disc strictly from normal bone films"; and that diagnosis of the existence of a ruptured disc must depend upon other symptoms and clinical findings.

The doctor further testified: "The findings are highly suggestive of nerve root pressure from a disc. They are not conclusive, I just say they were suggestive, that is all."

He further testified: "I don't think his leg, the leg in itself will alter his activity because he has no symptoms as far as his leg is concerned." He testified that the atrophy would be permanent.

On cross-examination, the doctor testified that there were only two symptoms indicating disc injury, the atrophy of the left leg and the sensory loss in the left leg; that all other tests made for disc injury were negative; that there are 15 or 20 other tests that are usually made in the diagnosis of a disc injury; that the examination made by him a short time before the trial was for the sole purpose of enabling him to testify properly at the trial as to the existing condition of plaintiff. He testified that there was no particular significance in the atrophy. He made no diagnosis of a ruptured disc, but declared that the two symptoms of

312

atrophy and sensory loss were highly suggestive of nerve root pressure.

On redirect examination, the doctor testified about the test for sensory loss; that this was done by pricking with a pin along the outer side of the leg and foot; that he first tested as to both legs and feet in November 1953 and again at his latest examination and that there had been some sensory loss and some difference in result of the examination between the right and left legs where none existed formerly.

On recross-examination, he testified, as to the sensory symptoms, that the basis for his diagnosis of sensory loss by pin-pricking was in the answers given to him by plaintiff; that is, he would stick the pin against the leg or foot and make some such remark as, "Now, does that feel as sharp as it does on the other leg?" This he called a subjective symptom, the measurement of the calf of the leg being an objective symptom.

On redirect examination he was asked if he had observed any flinching on the part of plaintiff while making such a test and answered, "If you stick them hard enough you can make them flinch, but I was not testing the man's veracity. The only way I can make a diagnosis is to believe the patient; * * *".

The doctor testified that there might be several different causes for such symptoms as he found in plaintiff.

■ We do not think that the testimony outlined above is sufficient as to a permanent injury resulting from the automobile collision out of which this case arose; but if it could be taken as substantial evidence of permanent injury, there is not one word of testimony by which the jury could make any allowance to plaintiff for any life-long injury.

The evidence does show loss suffered by plaintiff for a time following the collision, but there is no attempt to show what loss, if any, plaintiff will suffer in the future on account of any possible injury suffered by him.

The jury could do no more than merely speculate about the plaintiff's future loss, and in order to justify the giving of the instructions as to permanent injury and future loss of earning power and the mortality tables, there must be some evidence which directly gives the jury a means by which to measure damages on that account.

We think the situation in this case is much like that in the case of Dominguez v. Albuquerque Bus Co., 58 N.M. 562, 273 P.2d 756, 758. In that case the court stated:

"These cases indicate the admissibility in evidence of the life expectancy tables in a proper case, but indicate that there must be a showing of permanent injury to constitute a proper case."

We quote again from the court in the Dominguez case, supra:

"The testimony in the instant case, heretofore quoted, is not substantial

evidence of permanent injury and, for that reason, it was error on the part of the trial court to permit the introduction of the life expectancy tables over the objection of appellants."

Bearing in mind that the testimony of the doctor was that the atrophy was "highly suggestive" of nerve root pressure from a ruptured disc, though he stated there might be other causes for the appearance of such symptoms; and further bearing in mind that the doctor testified that, while no improvement of the atrophy could be expected, still that condition was believed by him to be insignificant, and that he also testified that there might be an improvement as to the plaintiff's back condition, whatever caused it, without stating to what extent the improvement might go, his testimony, as showing permanent injury, would seem to be worthless. It should be noted also, as to the showing of future loss, the record shows that at the time of trial plaintiff's earnings had increased since the date of his injury. This was attributed to the growth of his business. Not only is evidence lacking to show definite permanent physical injury but a possibility of future increased earnings is made clear.

We think it evident that the instructions with reference to future loss of earning power, mortality tables, and future pain and suffering, were erroneous.

■ The verdict was for $3,000 in plaintiff's favor, with no indication as to how the jury arrived at the verdict. Under such circumstances, a considerable portion of the amount allowed may be on account of future loss of earning power and future pain and suffering. The error is prejudicial.

Defendants' fourth point submits that the court was in error in instructing the jury that it might return any verdict not in excess of $6,000.

■ We think the point not well taken. Plaintiff alleged special damages on account of damage to his automobile in the sum of $450; that he was damaged by the loss of use of his car in the sum of $200; that he had required medical attention and treatment and would require further medical attention, which would amount to approximately $250; that he was incapacitated to the extent that he could not attend to his business, in the sum of $2,500. It is true that these amounts, added, do not aggregate $6,000; but plaintiff alleged that he had "suffered numerous and severe wounds, contusions, bruises, lacerations, abrasions, shock, and other painful and serious injuries, and experienced great physical and mental pain and anguish, * * *". The items so declared in the complaint were such as to make the defendant respond in damages if plaintiff was entitled to recover at all, and the jury was

entitled to make an award of a reasonable amount on account of the injury suffered, if any, as stated in the quotation just above set out. The prayer for damages being in the amount of $6,000, there was no error in instructing the jury as to the verdict not exceeding that amount.

▮ Defendants present the argument, under Point Five, that the refusal of the trial court to submit requested special interrogatories to the jury was an abuse of discretion. The interrogatories requested dealt solely with the amount awarded by the jury for each of several items, to wit, damage to automobile, loss of time and wages, loss of use of automobile, injuries, and medical expenses. Cases previously before this court have held that the giving of special interrogatories to the jury, concerning questions of fact that arise in the case, is within the sound discretion of the court. Larsen v. Bliss, 43 N.M. 265, 91 P.2d 811; Madsen v. Read, 58 N.M. 567, 273 P. 2d 845. The allegations of the pleadings and the proof submitted, however, are such that we believe the defendants were entitled to have the jury's expression as to what items of damage for which allowance was made; and how much was given for each item for which allowance was made. In no event could an allowance be made for any of the items alleged in excess of the amount stated in the complaint as that sustained.

The sixth point relied upon by defendants is that the verdict of the jury was excessive. Since the judgment must be reversed for reasons above stated, it is unnecessary to consider the point.

The judgment of the lower court should be and is hereby reversed and the case is remanded for new trial. It is so ordered.

COMPTON, C. J., and SADLER and McGHEE, JJ., concur.

LUJAN, J., concurs in the result.