326 P.2d 89

L. H. TERRY, Plaintiff-Appellant,

v.

L. A. BISSWELL and B. C. Eppler, Defendants-Appellees.

No. 6348.

Supreme Court of New Mexico.

April 11, 1958.

On Motion for Rehearing May 27, 1958.

William J. Heck, Hobbs, Leonard Howell, Midland, Tex., for appellant.

Atwood & Malone, Charles F. Malone, Russell D. Mann, Roswell, for appellees.

SADLER, Justice.

The plaintiff below appeals from the judgment of the district court of Lea County, entered notwithstanding the general verdict in his favor, setting aside the general verdict for plaintiff and judgment entered thereon for personal injuries suffered by him in being struck by an automobile driven by defendant on the streets of Lovington, New Mexico.

The basis of the trial court's action will appear from a special interrogatory submitted to the jury at defendant's request following the general charge and the negative answer to such interrogatory by the jury. The events leading up to the decisive ruling of the court are so well set forth chronologically in the brief of plaintiff's counsel that we take the liberty of appropriating same as a part of our statement of the proceedings below.

At the conclusion of the evidence, and at the request of the defendants, the trial court submitted a special interrogatory to the jury worded as follows:

"Was the plaintiff walking in the cross walk at the intersection, as cross walk is defined in the court's instructions, at the time of the collision?"

Eleven out of the twelve jurors found that the plaintiff was not walking in the crosswalk. Despite the finding of the jurors on this special interrogatory, they returned a general verdict for the plaintiff

in the sum of $10,000. Such general verdict was worded as follows:

"We, the jury, find the issues in favor of the plaintiff and assess his damages at $10,000.00.

"/s/ Grady Richards

"Foreman"

After the court received the general verdict and the special interrogatory from the jury, the following proceedings occurred:

"The Court: Has the jury arrived at a verdict?

"The Foreman: We have, your Honor.

"The Court: Hand it to the Clerk, please. Gentlemen, I have a general verdict in favor of the plaintiff in the sum of $10,000.00, signed by Grady Richards, Foreman. I have an answer to the defendants' interrogatory which counsel will please inspect.

"The Court: (After counsel have inspected the interrogatory) Does counsel wish that I interrogate the foreman about the form of this?

"Mr. Malone: No, your Honor. It is an inconsistent verdict and we will have to make a motion.

"The Court: Make your motion.

"Mr. Malone: Come now the defendants and respectfully move this Court that the verdict of the jury be set aside and that judgment be rendered in favor of the defendants and against the plaintiff, notwithstanding the verdict, and as grounds therefor state:

"That the answer to the interrogatory by which the jury has determined that the plaintiff was not walking in the crosswalk at the intersection by eleven votes to one vote, which constitutes the required majority, necessarily results in an inconsistent verdict in that the law provides that, if the plaintiff was not in the crosswalk, then, as a matter of law, he is required under both the Statute and the Ordinance of the City to yield the right-of-way to the vehicle which was driven by the defendant, and is therefore negligent himself per se; and on the further ground that there can be no question of proximate cause as reasonable minds could not differ but that the acts of the plaintiff, was guilty of contributory negligence, were a proximately contributing cause of any injuries which the plaintiff has received.

"The Court: The motion of the defendants will be sustained and the verdict of the jury will be set aside. Gentlemen of the jury, under the instructions you were told that in the event this plaintiff was not in the crosswalk at the time of the collision, he was guilty of contributory negligence which would bar recovery. You found, as I understand it, that he was not in the

crosswalk at the point and time of the collision. He was, therefore, guilty of contributory negligence as a matter of law, and under the instructions, is not entitled to recover. The jury will be discharged and the verdict will be set aside."

Thereafter, the plaintiff moved the Court to set aside the judgment so rendered for the defendant and to reinstate the general verdict of the jury that was rendered for the plaintiff on the grounds that there was no inconsistency between the special finding and the general verdict, in that the general verdict necessarily was a finding by the jury that plaintiff's walking outside the crosswalk was not a proximately contributing cause of the accident. This motion was overruled by the Court.

The action of the learned trial judge was tantamount to a determination as a matter of law that the plaintiff's failure to cross within the crosswalk was a proximately contributing cause of the plaintiff's injuries and damages.

In the foregoing recitation in narrative form from the brief in chief of the plaintiff, it will be seen the trial judge interpreted the special interrogatory and the answer to it as "tantamount to a determination as a matter of law that the plaintiff's failure to cross within the crosswalk was a proximately contributing cause of the plaintiff's injuries and damages." The question whether he erred in taking this view of the evidence constitutes the decisive issue in the case.

It was on the evening of January 23, 1956, that plaintiff returned from work to his apartment, donned a sport coat, visited with a friend there for a short time, had a drink of whiskey while there and then proceeded to the Llano Hotel to visit with his job foreman, one Mapes. While waiting to see him he had a cup of coffee. He walked out of the hotel with Mapes and talked briefly with him on the sidewalk. The Llano Hotel is located at the southwest corner of the intersection where the accident occurred.

His conversation with Mapes concluded, the plaintiff started to cross the intersection of Avenue E and Main Street in Lovington, New Mexico. He looked both ways before leaving the curb at the southwest corner of the intersection to ascertain whether there were cars approaching from either direction. Noticing none, he began to cross the intersection, proceeding in an easterly or northeasterly direction. When he arrived at the center of the highway he took another look both ways and observed the defendant Eppler's Ford station wagon approaching from the south proceeding north. He estimated it as about 120 feet south of him as he got to center of the highway. Thinking he had time to cross, he continued directly across the street to the east side of the intersection. The first thing he knew, the station wagon was

right on him and he did not have time to take another step.

The station wagon struck the plaintiff when he was approximately three-fourths of the way across the intersection. He had been proceeding across the street at a normal gait. He was struck on the right side by the right front fender and right headlight of the station wagon. The fender was bent and the headlight broken. The plaintiff did not hear the sound of any horn nor the screeching of brakes nor did he see any signal. His hearing was good and he estimated the speed of the car at 35 miles per hour.

The accident happened about 7:30 p.m. while the station wagon was being operated by defendant, Biswell, although owned by defendant, Eppler, who was riding on the seat with Biswell at the time. Main Street, according to the investigating officer, is 58 feet, 6 inches wide and contains two northbound and two southbound traffic lanes separated by a center line in the middle of the highway. Avenue E intersects Main Street in an east-west direction and is 49 feet 4 inches wide, according to the measurements of the investigating officer.

At the time of the accident the weather was fair, the blacktop pavement was dry and there were no traffic lights at the intersection. There was an incandescent street light at the northeast side of the intersection, service station lights northwest of the intersection, a neon sign in front of Llano Hotel on southwest corner, some lights in the windows of the Jackson Chevrolet building on southeast corner and lights from service stations were visible all along the road. Defendant, Biswell, admitted he observed a showing of 25 miles per hour speed about a block before the accident occurred.

The defendant, Biswell, was a sergeant on the New Mexico State Police force at time of the accident. He testified he was driving north on the inside lane when suddenly the plaintiff came into view of his headlights. He said he looked at his speedometer and it showed 25 m.p.h. The plaintiff, according to his testimony was about 2 or 3 feet beyond the center line and appeared to be crossing the street diagonally. He immediately applied his brakes and turned his wheel to the left in an effort to miss the plaintiff but was unable to do so. He says his arm was against the horn and it blew. The collision occurred in the middle of the intersection. He claimed not to know how far plaintiff was from him when he first saw him, though he says he applied his brakes immediately when he did.

Although claiming to have been driving at not more than 25 m.p.h., his car left skid marks that were measured by the investigating officer and found to be 64 feet 9 inches on left side. The marks started at the edge of the center of the two northbound lanes and pulled toward the left or center of the highway. Dirt and glass were

found around the traffic lane where the skid marks were located and more to the north part of the intersection. The skid marks started the length of the car plus 27 feet south of the south line of the intersection. The body of plaintiff was located by the investigating officer as being 7 feet 6 inches north of the north curb line of the intersection. There was debris on the highway approximately 33 feet south of the body. The station wagon came to a stop 19 feet beyond where the plaintiff's body was lying, or a total of 102 feet north of the point where the skid marks made their first impression upon the highway.

There was some evidence that the plaintiff had been drinking. He had admitted taking a drink after leaving work and before the accident happened and defendant, Biswell, testified plaintiff told him after the accident at the hospital one day that he didn't know what had happened, that he was too drunk to remember. The plaintiff denied all of this. There was other evidence touching intoxication, pro and con, Dr. Stone, the treating physician testifying there was nothing about the plaintiff's condition that led him to suspect intoxication.

Following the accident the plaintiff was removed to the Lea County General Hospital and there is no doubt but that he was grievously injured and was compelled to incur medical and hospital expenses running into thousands of dollars. There is no need to go into this phase of the case,

however, since no question touching such expenses is raised on this appeal.

From the foregoing recitation of the facts, it appears the sole question necessary for a decision of this case arises on the claim that the special verdict is in irreconcilable conflict with the general verdict by which an award of $10,000 damages in plaintiff's favor was given. The general verdict under instructions which were not objected to awarded a verdict in the plaintiff's favor. The jury were fairly and repeatedly informed in the general charge that plaintiff could not recover if himself guilty of contributory negligence. Several paragraphs of the general charge end with substantially this language, to wit:

"* * * you must return a verdict in favor of the plaintiff and against the defendants unless you also find from a preponderance of the evidence that the plaintiff was himself negligent *and that such negligence proximately contributed to cause the accident*." (Emphasis ours.)

It is to be noted that in every instance the language employed is in the conjunctive —not only must they find from a preponderance of the evidence that the plaintiff was himself negligent, but also "and that such negligence proximately contributed to the accident." Counsel for the plaintiff assert that when the jury returned its general verdict in favor of plaintiff it settled both the question of negligence and causal

connection between that negligence and the plaintiff's injury as the sole cause of the injury. In other words, it thereby resolved the issue of contributory negligence in plaintiff's favor. Not so, however, where causal connection between plaintiff's negligence and the injury is shown. Williams v. Haas, 52 N.M. 9, 189 P.2d 632; Curtis v. Schwartzman Packing Co., 61 N.M. 305, 299 P.2d 776; and McMinn v. Thompson, 61 N.M. 387, 301 P.2d 326. In Williams v. Haas, supra, we said: [52 N.M. 9, 189 P. 2d 634.]

"Whether the plaintiff has been guilty of contributory negligence barring a recovery is nearly always a question for the jury under proper instructions by the court. It is rarely the case the facts are such that the court can say as a matter of law that plaintiff is himself such an offender against the rules of the road as to deny him recovery. Yet, on occasions it does thus appear and when it does, the court should not and will not hesitate so to declare. Gray v. Esslinger, 46 N.M. 421, 130 P.2d 24, and cases cited. * * *

\* \* \* \* \* \*

"If it is granted that the plaintiff was negligent in entering the intersection as he did without stopping or signaling as required by 1941 Comp., § 68–517, or in violation of the provisions of § 68–518, according right of way to vehicles on the right under certain conditions (although apparent that plaintiff's car had entered the intersection before defendant's truck did) still these facts do not resolve the decisive inquiry of causation. After all contributory negligence is not established until causal relationship between it and the injury is shown. This is where error appears in the trial court's action in directing a verdict against the plaintiff. He was entitled to have it say whether any violation shown by him of statutory regulations or the common law of due care was a proximately contributing factor in bringing about his injury."

Again, in McMinn v. Thompson, supra, [61 N.M. 387, 301 P.2d 328] dealing with a set of facts closely akin to those here present, we spoke on the subject of whether the facts presented a jury question, as follows:

"The next point urged by defendant is the plaintiff was guilty of contributory negligence as a matter of law in crossing the street in the middle of the block in violation of an ordinance of the City of Portales prohibiting one from standing or walking in a street if it interferes with traffic, and that she also violated § 64–18–34, NMSA 1953, which provides every pedestrian crossing a roadway at any point other than within a marked cross walk or within an unmarked cross walk within an

intersection shall yield the right of way to all vehicles upon the roadway.

"It is not to be questioned that the plaintiff was guilty of negligence *per se* in crossing this street (which is also a state highway) in the middle of the block in the nighttime so that she was struck by a car with its headlights burning and of which she had an unobstructed view. Zamora v. J. Korber & Co., 1955, 59 N.M. 33, 278 P.2d 569; Moss v. Acuff, 1953, 57 N.M. 572, 260 P.2d 1108. The question is, Should the trial court have held as a matter of law that her acts were a proximate contributing cause of her injury and directed a verdict against her, or was it the province of the jury to determine such question and to award the plaintiff damages if it determined the issue in the negative? We believe it was a matter for the determination of the jury under our decisions in Williams v. Haas, 1948, 52 N.M. 9, 189 P.2d 632, and Curtis v. Schwartzman Packing Co., 61 N.M. 305, 299 P.2d 776."

We thus are called upon to declare whether a mere finding by the jury that plaintiff himself was guilty of negligence barring recovery in violating both a statute (1953 Comp. § 64–18–34) and sections 10–904 to 10–905 of the municipal code, by attempting to cross the intersection outside the crosswalk, where the special finding is silent on the question of causation. In this case, as in Williams v. Haas, supra, and McMinn v. Thompson, supra, the plaintiff, in each, was negligent *per se* but that still left open under the facts the question whether that negligence was a proximately contributory factor in his injury. We held the jury was entitled to answer that question.

■ When the trial court is passing upon a motion for judgment notwithstanding the verdict, the party favored is entitled to have the evidence viewed in the light most favorable to him and is entitled to every inference of fact fairly deducible from the evidence. In Rivera v. Ancient City Oil Corporation, 61 N.M. 473, 302 P.2d 953, 957, this Court said:

"* * * Where reasonable minds might very well differ on the question of proximate cause, remote cause, sole cause, or intervening cause, the matter is issuable before a jury. American Insurance Co. v. Foutz & Bursum, 60 N.M. 351, 291 P.2d 1081; Lucero v. Harshey, 50 N.M. 1, 165 P.2d 587.

"In passing upon a motion for judgment notwithstanding the verdict the favored party is entitled to have the testimony considered in a light most favorable to him and is entitled to every inference of fact fairly deducible from the evidence; all contrary evidence is to be disregarded. Michelson v. House, 54 N.M. 197, 218 P.2d 861. Ordinarily, whether a plaintiff's neg-

ligence proximately contributes to his injury, is a question for the jury. Williams v. Haas, 52 N.M. 9, 189 P.2d 632; Thompson v. Dale, 59 N.M. 290, 283 P.2d 623."

We are not unmindful of the rule that when a special verdict contradicts the general verdict on a material issue, the former controls. See, Crocker v. Johnston, 43 N.M. 469, 95 P.2d 214; Morris v. Cartwright, 57 N.M. 328, 258 P.2d 719; and Howse v. McKee Co., 63 N.M. 129, 314 P. 2d 727.

Nevertheless:

"* * * The fact that the plaintiff violated a traffic reglation at the time of the accident, while not conclusive or necessarily determinative of his own contributory negligence, is a circumstance to be considered in determining whether, at the time of the accident complained of, he acted with reasonable care, so as to free himself from negligence contributing directly to the injury. *The mere concurrence of the violation of a traffic regulation with an accident in point of time does not, of itself, render the violation a concurring cause of the injury.*" (Emphasis ours.) 5 Am.Jur. 741, § 409.

Counsel for defendant would have us hold under the facts here present that it does. We cannot so agree. On the contrary, we agree with counsel for plaintiff that there is sufficient conflict in the facts as to speed at which defendant was traveling, condition of the street as to being completely dry or damp, location of the plaintiff when first observed by driver, lighting at the intersection and the location of plaintiff when struck by defendant, as to render issuable before the jury the question whether plaintiff's negligence contributed *proximately* to his injury, or is to be viewed only as a remote factor therein. The jury said he was negligent. The special finding goes no further than so to affirm. One more pertinent inquiry would have brought forth an answer whether it contributed *proximately*. It was never asked. If it had been and provoked an affirmative answer, irreconcilable conflict between the general and special verdict would have been present. Absent, there is no irreconcilable conflict between the two verdicts. The trial court erred in setting aside the judgment in plaintiff's favor. It should have been permitted to stand.

The plaintiff as appellee complains vigorously of the trial court's action in declining to permit him to file a trial amendment pleading "last clear chance." We think it unnecessary to consider or determine this question in view of the conclusion we have reached.

It follows from what has been said the judgment must be reversed and the cause remanded with a direction to the trial court to enter judgment on the verdict.

It will be so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

SHILLINGLAW, J., did not participate.

On Motion for Rehearing.

SADLER, Justice.

Only one claim in the motion for rehearing moves us to say something regarding the motion. Additional allegations or grounds relied upon, in substance, are simply a reargument of claims put forth in the briefs of defendant filed prior to submission. It is asserted, however, that our opinion mistakenly stated the station wagon came to a stop, "19 feet beyond where plaintiff's body was lying, *or a total of 102 feet* north of the point where the skid marks made their first impression on the highway," in employing the underscored portion "or a total of 102 feet" north of where the skid marks began.

We must confess it was inaccurate to give the stated distance "102 feet" as the distance north of the point where the skid marks began, or made the first impression on the paving. Counsel for plaintiff so asserted in their brief but we can find no place in the record where that distance was actually given as the measured distance indicated.

But as plaintiff's counsel point out there was confusion in the evidence as to just where the skid marks did begin. Officer White who testified on this point could not,

himself, give exact figures on the distance. That it was a greater distance than the 64 feet claimed by defendant's counsel seems obvious. The 64 feet mentioned failed to take into account the overall length of the car, either before or after the skid. Officer White testified the skid marks started at a point 27 feet plus the length of the vehicle south of the line of intersection and that the station wagon was located 19 feet, 10 inches, from the body of plaintiff; and further that the skid marks started in some area "from the car back." The officer, himself, could give no exact figures on distances for he said:

"Q. In other words, the 64 feet end up here and drop back 64 feet south of that point. Would you indicate there about where they started? A. Well on the drawing they start right about along here, but I just don't remember where they start, the southern-most portion, place."

So it is there is no specific testimony in the record that the station wagon came to a stop exactly *102 feet* north of the point where the skid marks made their first impression on the highway. Nevertheless, in the confused state of the testimony on the issue, the jury very well may have found the distance was more than the 64 feet contended for by defendant, if not only little less than the distance stated in the opinion. We do not feel that the error in this statement in the opinion is of sufficient

consequence to change our announced view that whether the plaintiff was guilty of contributory negligence was a matter for the jury, and not to be declared as a matter of law.

The motion for rehearing will be denied.

It Is So Ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.