414 F.2d 1320
 KINGWOOD OIL COMPANY, a Corporation, J. S. Bugas, Max
Fisher, I. L. Goldman, Marathon Oil Company, a
Corporation, W. E. Slaughter, Jr., C.
Wm. Sucher, H. E. Wenger, and
M. S. Schiller, Appellees,
v.
PLATEAU, INC. and Thomas J. Briley, Appellants.
 No. 7-69.
 United States Court of Appeals Tenth Circuit.
 Aug. 27, 1969, Rehearing Denied Oct. 13, 1969.
 
 Mary C. Walters, of Toulouse, Moore & Walters, Albuquerque, N.M., for appellants.
 George L. Verity, of Brown, Verity & Brown, Oklahoma City, Okl., for appellees.
 Before FAHY, Senior Circuit Judge,[1] LEWIS and SETH, Circuit judges.
 SETH, Circuit Judge.
 
 
 1
 The appellees commenced this action to recover for damage to their gas well equipment and to the producing well itself which took place when appellants' truck ran into the wellhead pipes, valves, and other equipment thereon installed.
 
 
 2
 The issue of liability was determined on motion by the trial court. The matter of damages was tried to the court without a jury. The court found for the plaintiffs and the defendants-appellants have taken this appeal.
 
 
 3
 The record shows that Thomas J. Briley, the individual appellant herein, and an employee of the appellant, Plateau, Inc., while driving a truck and semi-trailer, ran over wellhead equipment on a well belonging to the appellees. The consequence of the impact was damage to the natural gas formation from which the well was producing, and damage to the well equipment. At trial the parties stipulated $5,569.81 as the amount spent by the appellees in repairing the damaged well. The court after hearing the parties' respective witnesses and examining the various exhibits offered in evidence determined that the appellees had also suffered damage by reason of the loss of future production of gas and gas condensate from the appellees' well. This damage was determined by the court to be $94,275.00. Judgment was thus rendered in favor of the appellees for $99,844.81.
 
 
 4
 On appeal the appellants first contend that their negligence in running over the appellees' wellhead was never properly established as the proximate cause of the well's loss of production. They argue that the court in its decision did not give adequate consideration to the testimony of their expert that the blow and vibrations resulting from the impact of the semi-trailer with the wellhead equipment could not have caused a hole in the casing large enough to produce the amount of mud that flowed around the well after the accident. The fact that the impact knocked the flow line loose from the casing and allowed the well to blow free is not in dispute nor is the fact that the mud flowed into the formation and also out onto the surface. Appellants contend instead that either the casing was weak or 'the mud came from the formation itself into one of the intentional perforations above the cement footings of the well.' Mr. Walsh, their expert witness, testified to that effect.
 
 
 5
 In the alternative the appellants contend that even if the impact caused the casing to rupture, the appellees' method of reworking the well further accentuated and aggravated its loss of production inasmuch as they used water to kill the well when it was blowing free into the air after the impact. An expert witness testified that engineers differ as to the methods of reworking or killing wells even in a given area, depending on the risks involved and upon other considerations.
 
 
 6
 Mr. Bartlebaugh, expert witness for the appellees, testified that in his opinion the impact caused the casing to fail which explains the amount of mud found around the well after the collision, and that the only explanation of the well's being good before and poor after the accident is that the collision caused a casing failure which in turn allowed mud into the formation which damaged it. Further it was his opinion that the appellees' method of killing the well with water rather than with gas, as appellants urge it should have been done, was a method most acceptable in the trade. Also under the circumstances it was the safer and more desirable one because of the wellhead pressure. He also testified this was the suitable method because after the accident the mud was blowing wildly and no one knew where or how deep the casing rupture had occurred.
 
 
 7
 In light of the different views expressed by the experts, the trial court had to make a determination, and his findings were that the truck collided with the wellhead equipment, damaged the well casing, and that the appellees acted prudently in reworking the well; that the method they chose, killing by water, was reasonable under the circumstances, especially considering the attendant dangers when dealing with this gas well which had suffered subsurface equipment damage.
 
 
 8
 The findings of the trial court on this aspect of the case are well supported by the record and will not be disturbed. Glens Falls Insurance Co. v. Newton Lumber & Mfg. Co., 388 F.2d 66 (10th Cir. 1967); British America Assur. Co. of Toronto, Canada v. Bowen, 134 F.2d 256 (10th Cir. 1943).
 
 
 9
 Appellants' second ground for reversal is that the method by which the appellees computed damages was so conjectural, speculative, and inaccurate as to provide no basis for the trial court to reasonably ascertain damages. They base their argument on the fact that Mr. Bartlebaugh, appellees' expert, said that he assumed a twenty-year life in calculating damages because the twenty-year contract is a 'recognized figure in the gas industry.' Appellants argue that the gas sale contract had been in effect for nine years before the accident and gas sold under it for all or some of this period. Further they argue that inasmuch as appellants could only produce the amount of gas that the New Mexico Oil Conservation Commission would allow under proration, and the amount that the gas purchaser would buy, it was impossible to say that they could extract and sell all the gas the well was capable of producing.
 
 
 10
 Finally appellants argue that appellees' expert witness should have used a different basis in making his computations. It should be first observed that computations of this type and reports based thereon relating to gas reserves are generally accepted as reliable. Appellees' expert so testified and that he himself had rendered such reports to banks, which used them to evaluate security for loans. Appellees' expert testified that there were three principal methods of calculating appellees' loss of reserves and the method he used, a pressure cumulative analysis study, was probably the most accurate. Courts in the past have relied on such engineering estimates of reserves similar to those in this case. See Gallaspy v. Warner, 324 P.2d 848 (Okl.1958); Texon Drilling Co. v. Elliff, 216 S.W.2d 824 (Tex.Civ.App.1948).
 
 
 11
 The appellees' use of the twenty-year figure in calculating the depletion of the well was in no way controverted by evidence proffered by the appellants. Nor did the appellants controvert the estimated recoverable reserves by suggesting different computations in light of proration and future markets.
 
 
 12
 The measure of damages in these circumstances need not be determined by mathematical accuracy, but can be calculated by reasonable and accepted methods which include in part estimates. Southwestern Investment Co. v. Cactus Motor Co., 355 F.2d 674 (10th Cir. 1966); Union Carbide & Carbon Corp. v. Nisley, 300 F.2d 561 (10th Cir. 1962); T. F. Scholes, Inc. v. United States for Use of H. W. Moore Equipment Co., 295 F.2d 366 (10th Cir. 1961); Telluride Power Co. v. Williams, 164 F.2d 685 (10th Cir. 1947). The measure of damages used here conforms to these standards.
 
 
 13
 The trial court's judgment is affirmed.
 
 
 
 [1]
 Of the United States Court of Appeals for the District of Columbia, sitting by designation