SHARON STEEL CORPORATION, a
corporation, Plaintiff-Appellee,

v.

LAKESHORE, INC., a corporation,
Defendant-Appellant.

No. 83-2378.

United States Court of Appeals,
Tenth Circuit.

Jan. 31, 1985.

E. Douglas Latimer of Spann, Latimer & Hollowwa, Albuquerque, N.M., for defendant-appellant.

Rex D. Throckmorton of Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N.M., for plaintiff-appellee.

Before LOGAN, SETH and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Sharon Steel Corporation brought this diversity action against defendant Lakeshore, Inc. when a mining sheave wheel shaft used in plaintiff's business broke. Plaintiff's corporate predecessor had purchased this product from defendant. A district court jury answered specific interrogatories and imposed liability on defendant on theories of strict liability and negligence, finding total damages of $267,210. The trial court allowed prejudgment interest on the award. Defendant appeals the decision, asserting that plaintiff did not present sufficient evidence to establish a cause of action based on either strict liability or negligence, that plaintiff's damages were for economic loss not recoverable under either theory, and that, in any event, plaintiff is not entitled to prejudgment interest.

After examining the record we have concluded there was sufficient evidence to support submitting the strict liability question to the jury. We recently held, however, that New Mexico law does not permit recovery of economic loss in products liability cases tried on the basis of strict liability. *Colonial Park Country Club v. Joan of Arc*, 746 F.2d 1425 (10th Cir.1984). The jury found defendant was negligent, however; thus, if the damages awarded were proper under a negligence theory, that alone may support the judgment. *See generally* 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 49.02 (2d ed. 1984). Because we hold that the case was properly submitted to the jury on the negligence theory and that the damages awarded were permissible in a negligence case, we analyze only those two issues plus the question whether prejudgment interest was proper.

I

In order to understand this case, a basic knowledge of the configuration of the mining equipment involved is helpful. At plaintiff's Bayard, New Mexico underground mine there is an eighty-five foot metal structure known as a head frame above the mine shaft. This head frame

supports four nine-feet diameter sheave wheels. These sheave wheels in turn support hoist cables that raise and lower the mining skips that carry the mined copper. As the sheave wheels turn at the top of the head frame, the hoist cables are drawn or released from large cylindrical drums. The hoist house contains large motors that turn the drums which wind the hoist cable. Therefore the sheave wheels guide the hoist cables into the mine and into the hoist house.

On March 5, 1981, a sheave wheel shaft that plaintiff's predecessor purchased approximately fifteen years earlier broke at the mine. This shaft had acted as an axle supporting the sheave wheel in the head frame. When the shaft broke, the sheave wheel fell approximately fifty to sixty feet from the head frame to a parking lot below, and the hoist cable, pulling a loaded skip, fell approximately 600 feet down the mine shaft. As the skip fell, its safety devices gouged hardwood guides along the mine shaft.

The dispute in this case concerns the cause of the sheave wheel shaft failure. Plaintiff argued that the break occurred because defendant "mismachined" the shaft. Defendant's plan for the shaft required two "step-downs" or decreases in radii, with a quarter-inch minimum radius at the first step-down. Instead of adhering to its plan, defendant built the shaft with a $\frac{1}{16}$th inch radius at the first step-down. This step-down is the place at which the shaft broke. The dispute on the negligence theory is whether defendant was negligent in manufacturing the shaft with the $\frac{1}{16}$ inch radius. Defendant presented to the jury evidence that plaintiff's misuse of the equipment caused the accident. Defendant argued that plaintiff caused the shaft to break by overloading the system, by not properly maintaining the braking apparatus for the system, and by not properly maintaining the ball bearings that allowed the shaft and the wheel to rotate.

Defendant argues that the district court should have directed a verdict in its favor on the issue of negligence. Although New Mexico law governs the substantive law questions in this diversity action, federal law controls the procedural issue of whether the plaintiff has presented sufficient evidence to withstand a motion for a directed verdict. *See, e.g., Martin v. Unit Rig & Equipment Co.*, 715 F.2d 1434, 1438 (10th Cir.1983). In *Martin*, we stated the considerations in granting or denying a motion for a directed verdict.

"Fed.R.Civ. 50(a), which provides for a motion for a directed verdict, is intended to remove from the jury a case where there is either a 'complete absence of proof of an issue or issues material to the cause of action' or where 'there are no controverted issues of fact upon which reasonable men could differ.' 5A Moore's Federal Practice ¶ 50.02[1], at 50–20 (2d ed. 1982). To ensure that the court's exercise of discretion does not improperly invade the province of the jury, the court's discretion to grant a motion for directed verdict is limited in several respects. Most importantly, the court must view the evidence in the light most favorable to the non-moving party. *Wylie v. Ford Motor Company*, 502 F.2d 1292, 1294 (10th Cir.1974). Further, the opposing party must be given the 'benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn.' *New Mexico Savings & Loan Ass'n v. United States Fidelity and Guaranty Co.*, 454 F.2d 328, 331 (10th Cir.1972). Moreover, the court is not permitted to consider the credibility of witnesses in reaching its decision, *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479–80 [64 S.Ct. 232, 234–35, 88 L.Ed. 239] (1943); Wright & Miller, Federal Practice and Procedure § 2527, at 560 (1971), nor may a court weigh the evidence or determine where the preponderance of the evidence lies. *Wylie v. Ford Motor Company, supra,* 502 F.2d at 1294. *See Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 700–01 [82 S.Ct. 1404, 1411–12, 8 L.Ed.2d 777] (1962) (jury weighs contradictory evidence and infer-

ences, draws ultimate conclusion, as to facts)."

715 F.2d at 1438. These directed verdict standards are quite stringent, and as a result, a court should be wary of deciding to withdraw a case from the jury's consideration. *See Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc.*, 584 F.2d 946, 951 (10th Cir.1978).

■ In order to justify a finding that defendant was negligent in this case, plaintiff must submit some evidence of defendant's breach of its duty to exercise ordinary care in machining the sheave wheel shaft. *See Fabian v. E.W. Bliss Co.*, 582 F.2d 1257, 1260 (10th Cir.1978). Defendant's employee who designed the shaft testified that he specified the ¼ inch minimum radius at the first step-down because it would be desirable to have as large a radius at the stepdown as practical in order to reduce stress. Plaintiff's expert testified that use of the ¹⁄₁₆ inch radius bordered on creation of a "notch," putting unnecessary stress on that place on the shaft, and that had the shaft been machined to a ¼ inch radius as provided in the plan it might have doubled the life of the shaft. Even defendant's employees who testified admitted that had the shaft been machined to the larger radius it would have been better and the shaft likely would have lasted at least slightly longer. One of them testified that the shaft was designed to last indefinitely and not to require replacement. Defendant presented no evidence for the failure to follow its own blueprint requirements, except surmise that the smaller radius was needed because of clearance problems. We hold that the jury could reasonably believe, as it evidently did, that defendant's employees were negligent in machining this shaft with a ¹⁄₁₆ inch radius at the first step-down when the blueprint required a radius four times as great, ¼ inch, and that this error was the proximate cause of the failure. Thus, the court properly denied defendant's motion for judgment n.o.v. on this issue.

## II

The jury found in favor of plaintiff for $267,210, representing "all damage sustained," of which $162,489 was for pecuniary loss. These figures were identical to the claims made by plaintiff on its Exhibit 40 for completed rehabilitation costs, future rehabilitation costs, and increased mining and milling costs. The rehabilitation costs represented costs of replacement of the sheave shaft, costs of repair of the mine shaft, costs of the firm hired to analyze the cause of the failure, and salaries of employees kept on the payroll while the shaft was repaired. The mining and milling costs were plaintiff's calculations of its losses in the form of decreased production while the underground shaft was repaired based upon assumptions as to production and average costs per pound to mine and mill. Although the New Mexico cases do not discuss directly the issue of the types of damages recoverable under a negligence theory, given the underlying policies stated in the decisions we believe that the New Mexico Supreme Court would allow recovery for the losses plaintiff sustained.

The term "economic loss" developed as a label for the remedy in contract for damages under warranty for a defective product. One commentator on the subject has written that economic loss is "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?*, 114 U.Pa.L.Rev. 539, 541 (1966) (*quoted in Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1169 (3d Cir.1981)). This "definition of economic loss accords with the policy of warranty law to protect the expectations of suitability and quality. The items most frequently sought as damages for unsuitable products are the reduction in value caused by the defect, costs of repair or replacement, and loss of profits." 652 F.2d at 1169 (footnote omitted). Need for replacement and loss of profits occur when the product does not meet the buyer's qualitative expectations. *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d

69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), relied upon by defendant, presented this qualitative defect situation. In *Moorman* the plaintiff sought to recover for a crack in its grain storage tank under both strict liability and negligence theories. The court denied recovery under these theories holding that tort law does not provide a remedy for a purchaser's disappointed expectations. *Id.*, 435 N.E.2d at 450. *See also Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1581–82 (10th Cir.1984).

Chief Justice Traynor in *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), remarked on the distinction between tort recovery and warranty recovery:

> "The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injury and there is no recovery for economic loss alone."

45 Cal.Rptr. at 23, 403 P.2d at 151. The plaintiff in *Seely*, arguing a strict liability cause of action, sought to recover the purchase price of a defective truck and recovery of lost profits resulting from the failure of the truck to .meet qualitative expectations. The court denied recovery for economic losses in the strict liability action, holding that the plaintiff's damages were recoverable solely in a warranty action.

■ Plaintiff in this case does not seek a remedy for the product's failure to meet qualitative expectations. Instead, plaintiff seeks compensation for damages caused by the failure of a negligently manufactured product. We believe that tort law supports recovery of damages that could be characterized as economic loss when, because of a negligently manufactured product, plaintiff is subjected to an unreasonable risk of injury to his person or property. *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d at 1171–72 (citing *Cloud v. Kit Manufacturing Co.*, 563 P.2d 248 (Alaska 1977)). In these tort injury situations plaintiffs are not seeking the fulfillment of their expectations in the bargain; they are seeking traditional tort damages to compensate for the injuries suffered.

In *LeSueur Creamery, Inc. v. Haskon, Inc.*, 660 F.2d 342 (8th Cir.1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982), the court allowed recovery of loss of profits to a cheesemaking operation because of defendant's negligent installation of pasteurizing equipment. The court stated: "Moreover, to the extent that some of LeSueur's claim is for lost profits in addition to property damage, a negligence action can be maintained for economic loss when personal injury or property damage are also present." *Id.* at 349 (applying Minnesota law). In *National Steel Corp. v. Great Lakes Towing Co.*, 574 F.2d 339, 342 (6th Cir.1978), the court held that "recovery for the value of production time lost as a result of negligence is permissible so long as the damages are proved to a 'reasonable degree of certainty.'" *Cf. Kingston Shipping Co. v. Roberts*, 667 F.2d 34, 35 (11th Cir.) ("a party may not recover [in tort] for economic losses not associated with physical damages."), *cert. denied*, 458 U.S. 1108, 102 S.Ct. 3487,

73 L.Ed.2d 1369 (1982). These cases demonstrate the courts' willingness to allow recovery for economic losses in negligence cases provided there is attendant physical injury.

We can find no case law in New Mexico that precludes plaintiff's recovery. Two decisions interpreting New Mexico law favor economic loss awards in negligence cases, although they did not involve damages caused by defective products. In *Curtis v. Schwartzman Packing Co.*, 61 N.M. 305, 299 P.2d 776 (1956), a negligence action involving an automobile accident, plaintiff sought damages for the loss of the use of his car. Generally, loss of use of an item is considered economic damage. Although the New Mexico Supreme Court reversed and remanded the jury's verdict on the issue of damages because of an erroneous instruction on permanent injury, the court discussed these alleged damages and had no objection to them. In fact, the court stated that the damage items specified in the complaint "were such as to make defendant respond in damages if plaintiff was entitled to recover at all...." *Id.* at 305, 299 P.2d at 782. We believe this statement indicates the New Mexico Supreme Court's willingness to award economic loss damages in a negligence case. The other case was in this court, *Kingwood Oil Co. v. Plateau, Inc.*, 414 F.2d 1320 (10th Cir.1969). There, interpreting New Mexico negligence law, we affirmed an award of damages for loss of future oil production when defendants' truck negligently struck plaintiff's oil well.

■ The rationale underlying the theory of negligence recovery also supports plaintiff's damage award. As the New Mexico Court of Appeals said in *Topmiller v. Cain*, 99 N.M. 311, 657 P.2d 638 (N.M.App. 1983), "Compensatory damages are recoverable if they proximately result from a 'violation of a legally-recognized right of the person seeking the damages, whether such be a right in contract or tort.'" 657

P.2d at 641 (quoting *Loucks v. Albuquerque National Bank*, 76 N.M. 735, 418 P.2d 191 (1966)). Because the "theory of damages is to make an injured person whole," 657 P.2d at 641, plaintiff here should not be foreclosed from receiving economic loss damages that are the reasonably foreseeable proximate result of the failure of the defective shaft. Therefore, we hold that the jury's award for damages, although including economic losses, is proper under New Mexico law in this action for negligent manufacture.

### III

■ Defendant argues that the award of prejudgment interest was improper. We interpret New Mexico law to permit a trial court judge to award prejudgment interest in a negligence case when the damages are precisely determinable. The New Mexico Supreme Court in *Board of Education v. Standhardt*, 80 N.M. 543, 548, 458 P.2d 795, 800 (1969), a case involving an architect's negligence, said, "[w]e believe that the trial court's allowance of interest must be presumed to be correct. Standhardt's answer was in the affirmative when asked if cost of repairs could be ascertained with reasonable certainty on April 24, 1962." Thus, the court focused upon the ease of ascertaining the amount of damages, rather than upon the underlying cause of action, in affirming an award of prejudgment interest.[1] *See also Wisdom v. Neal*, 568 F.Supp. 4 (D.N.M.1982) (federal district court awarded interest at the statutory rate from the time of an improper distribution of an estate in a legal malpractice case). Permitting prejudgment interest when damages are ascertainable with reasonable certainty conforms with the position of *Restatement (Second) of Torts.* Section 913 of the *Restatement* reads:

> "(1) Except when the plaintiff can and does elect the restitutional measure of

---

1. N.M.Stat.Ann. § 56–8–4(C) appears to assume the existence of a common law rule permitting interest awards in appropriate cases.

recovery, he is entitled to interest upon the amount found due

(a) for the taking or detention of land, chattels or other subjects of property, or the destruction of any legally protected interest in them, *when the valuation can be ascertained from established market prices,* from the time adopted for their valuation to the time of judgment...."

*Restatement (Second) of Torts* § 913 (1979) (emphasis added).

Our problem with the award of prejudgment interest in the instant case is that we do not believe the damages were ascertainable with reasonable certainty, despite the jury's acceptance of plaintiff's figures and its finding that the damages were ascertainable by May 1, 1981. There was much room for argument about the amount of the damages, even for repairs. Plaintiff did not replace merely the broken shaft, the hardwood guides and other damaged items. It replaced the cable, bearings and other parts in accordance with what it considered good practice. With respect to mining and milling costs plaintiff made mathematical calculations based upon presumed production, presumed copper content of ores, and estimates of personnel needs and costs. It presented different calculations to defendant several times during the pendency of the suit. One item included was the cost of hiring plaintiff's expert's firm to analyze the cause of the shaft failure, and that firm did not even make its report until December 31, 1981. Determining whether an award of prejudgment interest is proper is a matter of law, *see Navajo Tribe v. Bank of New Mexico,* 700 F.2d 1285, 1291 (10th Cir.1983), and although we defer to the proper exercise of the discretion of the district court, we are convinced this is not a proper case for the award of prejudgment interest.

We affirm the judgment of the district court in all respects except for its award of prejudgment interest. On that issue we reverse and remand for further proceedings consistent with this opinion.