**Dean ROBB, d/b/a Dean Robb Construction Co., Plaintiff-Appellant,**

v.

**UNIVERSAL CONSTRUCTORS, INC., a New Mexico Corporation, Defendant-Appellee.**

**No. 80–1544.**

United States Court of Appeals, Tenth Circuit.

Dec. 8, 1981.

Nathan Davidovich, Davidovich & Welton, Denver, Colo., for plaintiff-appellant.

James E. Goldfarb, Greengard, Blackman & Senter, Denver, Colo. (Kent E. Hanson, Greengard, Blackman & Senter, Denver, Colo., on the brief), for defendant-appellee.

Before McWILLIAMS, DOYLE and LOGAN, Circuit Judges.

DOYLE, Circuit Judge.

The plaintiff in the trial court seeks review of judgment entered following the filing of motions for summary judgment by both parties. Plaintiff seeks damages for a leased construction vehicle. Jurisdiction arises from diversity of citizenship.

The vehicle was destroyed a few days after the rental and delivery while it was being used by the defendant-appellee. The parties were able to agree on an amount as value of the vehicle, but the defendant-appellee refused to pay it for several months, and so the action is to recover for losses suffered as a result of the plaintiff-appellant not receiving the money in a timely fashion, whereby he could buy another similar piece of equipment.

The rental contract was quite brief and did not specifically cover the problem which is raised here. It was written on a purchase order of Universal Constructors, Inc., the defendant-appellee. It was dated October 27, 1977, and it stated rental of a Gradall (the equipment) for two weeks at $1,600 per week (option to keep longer if needed). Universal Constructors was to pay for the move from and to Arvada, Colorado, and was to be responsible for any damages other than normal wear and tear until returned to owner.

The complaint alleged that on or about October 27, 1977, plaintiff-appellant owned a Warner-Swasey Gradall vehicle; that said vehicle was rented to the defendant-appellee corporation for a period of time anticipated to be from two (2) to six (6) weeks. Said rental agreement was entered into in Arvada, Colorado, and the defendant was to be responsible for transporting the vehicle from Arvada to the job site in New Mexico, and then returning it, together with the extra equipment. Continued allegations are that in the first week of rental, on or about October 27, 1977, the defendant's agent operating the vehicle negligently caused it to become totally wrecked. The vehicle was not returned to plaintiff and the payment of moneys in lieu of the returned vehicle was made on April 11, 1978. Plaintiff maintains that he was entitled to receive $1,600.00 per week during all this period of time. Defendant's position is that the payment of the value of the merchandise ended the transaction. The trial court ruled that plaintiff was entitled to recover his damages incurred in going to New Mexico for the purpose of settling the transaction; otherwise he was not entitled to recover because of the fact that the payment of the $17,500.00 (plus interest) for the vehicle was all that he was entitled to.

## What Law Governs

On this appeal the defendant-appellee contends that the law of New Mexico applies because § 188 of Restatement of the Law, Second, Conflicts of Laws 2d, sets forth the contacts to be taken into account in applying § 6 in order to determine the law applicable to the issue. These are:

   (a) the place of contracting,

   (b) the place of negotiation of the contract,

   (c) the place of performance,

   (d) the location of the subject matter of the contract, and

   (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue. Sometimes the place of negotiating the contract and the place of performance are in the same state, and when that is the case, the local law of the state usually is applied.

In the instant case the parties negotiated the original contract while the plaintiff was away on a temporary visit in Wyoming. The defendant was in New Mexico, and negotiations were carried out over the long-distance telephone. The place of performance, according to the trial court, was Colorado because that was where the machinery was delivered to the appellee. We do not agree with this conclusion, but this is not material. Location of the subject matter of the contract was New Mexico. The defendant-appellee is domiciled in New Mexico and the plaintiff-appellant is domiciled in Colorado.

It is not surprising that the trial court concluded that the laws of New Mexico should properly govern, inasmuch as it was, in part, the place of contracting and negotiating, and the domicile of one of the parties was there as well. The trial court followed § 191, Comment i, Restatement of the Law, Second, Conflict of Laws 2d, inasmuch as this was a bailment in addition to being a lease of the machinery. The trial court said that "although the contacts are fairly evenly divided, since the parties contemplated that the vehicle would be used in New Mexico during the rental period, New Mexico law should govern the contract claim." The trial court called attention to the fact that the "most significant relationship" approach to tort claims as well as contract

cases is followed in Colorado. *First National Bank v. Rostek*, 182 Colo. 437, 514 P.2d 314, 320 (1973). The trial court also considered the choice of law issue from the standpoint of tort law applicable to conversion of the equipment as a result of destruction, and concluded that both the injury and the conduct leading to it occurred in New Mexico. Since Universal is incorporated in New Mexico, and inasmuch as it was a technical conversion, even from the standpoint of tort principles, New Mexico is the appropriate place from which the law should be applied. We cannot say that this determination was erroneous.

There is no indication from either the contract or the negotiations which led up to it that the parties contemplated damages which might arise from the complete destruction of the equipment. The provision contained in the agreement which covers it is the undertaking of appellee Universal to pay all damages other than normal wear and tear until the Gradall was returned to Robb.

### The Damages Which Resulted From Destruction of the Equipment

■ The issue of payment for the destroyed equipment has been disposed of. The parties agreed on payment of $17,-500.00 and Universal paid this sum. The only problem arises with respect to the time the payment was made. As we have previously noted, the parties settled this controversy in October, 1977, and it was not until April 28, 1978 that the payment of the $17,500.00, which had been promised in October of 1977, was made. This is the source of plaintiff's complaint, and the plaintiff's demand for rental according to the contract at the rate of $1,600.00 per week for a period of two weeks, and for the remaining period, $2,200.00 per week, which is the alleged value of the equipment to the plaintiff-appellant. Defendant-appellee takes the position that the most that plaintiff is entitled to is interest.

There cannot be any recovery under New Mexico law for the loss of use of the vehicle during the significant period of time. This is so even though the plaintiff has alleged and now claims that he did not have the money to replace this machinery until defendant-appellee actually paid the agreed amount.

However, we must conclude, as did the trial court, that such damages are not recoverable. Indeed, there is a New Mexico case which holds that there cannot be a recovery for loss of use if the property is totally destroyed. This decision in *Curtis v. Schwartzman Packing Co.*, 61 N.M. 305, 299 P.2d 776 (1956) is recognized and followed in New Mexico.

The *Curtis* case is not a recent one. It was decided July 26, 1956. Nevertheless, it is a positive authority which has endured through the years. It was an automobile accident in which a truck demolished the plaintiff's passenger car which he was driving at the time, in somewhat of a side-swipe collision. In any event, the automobile of the plaintiff was a total wreck, and he, of course, sought damages for loss of use. The instruction that was given advised the jury that if it should be found that the plaintiff was entitled to recover from defendant for damages to his car, and the car after the collision had no value except for salvage, in that event, plaintiff would be entitled to the difference between the reasonable market value of the car immediately before the collision, and its reasonable market value immediately after the collision; but that if it should be found that the plaintiff's car could have been restored to its former condition by repairs, and if the jury should find for plaintiff, then his damages should be in such amount as to afford the plaintiff the reasonable cost for repairs and a reasonable amount for the loss of use of the car during the time necessary to make the repairs. This was ruled valid by the New Mexico Supreme Court.

The equipment at issue in this case was totally destroyed and the $17,500.00 was looked to by both parties as payment which covered the total value of the equipment. Accordingly, New Mexico law precludes recovery of loss of use. This proposition of inability to recover for loss of use where the

property is destroyed is fairly well cemented into New Mexico law. Witness the pattern jury instruction, UJI Civ. 18.18, which directs the jury to consider as damages a reasonable rental amount during the time reasonably required to repair damaged property. The Committee Comment says:

> Damages for loss of use are not recoverable unless, in fact, it was reasonably necessary for the plaintiff to rent other property and he did, in fact, rent other property. No recovery can be made above the rental actually paid out or incurred. If the property is totally destroyed, then damages for loss of use are not recoverable. Citing *Curtis v. Schwartzman Packing Co., supra.*

Plaintiff-Appellant contends that his situation is different from the usual one: that it is to be treated differently by reason of the fact that the defendant-appellee was able to hold and use the money for roughly six months after the agreement had been reached. It is said that this is above and beyond the complete destruction of the property. We agree that it is different; it is a loss which is not pure loss of use, although it is akin to it, because, according to plaintiff, he had neither the property nor the money during this six month period, and he should receive recompense for it.

### Interest as Damages

■ It follows from the above discussion that the plaintiff is unable to recover rental or loss of use under the circumstances that are here presented, and in the light of New Mexico law. We now consider whether there can be any recovery of interest, and if so, what the formula should be. On this subject the law of New Mexico does not apply, because the suit was brought in Colorado, and we look first to Colorado law which is the law of the forum to ascertain what law governs. We find that there is a leading, although somewhat old, decision of the Supreme Court of Colorado, which mandates that the Colorado law should govern. That case is *Hays v. Arbuckle,* 72 Colo. 328, 211 P. 101 (1922). In the *Hays* case, the Court stated that when interest is allowed as damages the rate is to be governed by the law of the place where the suit is brought. 211 P. at 102. The *Hays* rule has been followed a number of times. See *North Drive-In Theatre Corp. v. Park-In Theatres,* 248 F.2d 232 (10th Cir. 1957). *But Cf. United Telecommunications, Inc. v. American Television and Communications Corp.,* 536 F.2d 1310 (10th Cir. 1976). In that case the *Hays* decision was distinguished and was not followed. The Court followed general damage principles to grant borrowing costs, that is, interest. *Hays* was discarded because it was assumed that under that decision Colorado permitted only 6% on the *judgment* under C.R.S. § 5–12–102 (1973), as opposed to interest as a form of damages.

A more recent decision is *Davis Cattle Co. v. Great Western Sugar Co.,* 544 F.2d 436 (1976). In that opinion by Judge McWilliams, moratory interest is explained at some length. The trial court had granted the beet grower plaintiffs 11.5% interest on the amount they should have been paid on the date contractually set for payment. This court there acknowledged that there are judicially created exceptions to the general rule that the allowance of interest is a creature of statute. The court went on to say:

> [i]n allowing prejudgment interest, the trial court recognized that just compensation for the victim is a fundamental principle of damages, and that where money has been wrongfully withheld, it is only fair that the victim receive interest on the money thus withheld. 544 F.2d at 441.

The court concluded by saying, "[W]e agree with the trial court that Colorado law permits an award of moratory interest in a situation of this type."

The court in *Davis Cattle* proceeded to consider the amount of interest, and on this, it noted that the trial court had allowed moratory interest at the rate of 11.5 per annum. This court said:

> The Company argues that at the most the interest rate should have been set at the statutory rate of 6% per annum. *Bank-*

·ers Trust Co., supra [108 Colo. 15, 113 P.2d 656 (1941)], declares that the true measure of moratory interest is the *benefit* to the wrongdoer, and that the statutory rate should be used only in the absence of proof as to the benefit accruing to the wrongdoer as the result of his wrongful detention. In the instant case the evidence was that the Company had to borrow much of the money which it used to make the initial payment to the growers. In this regard the trial court noted that the Company had obtained a $75 million line of financing at the rate of 11.5% and that by underpaying the growers the Company had saved itself interest charges on amounts it would have otherwise been forced to borrow. While the testimony on this matter was perhaps in some degree of conflict, we cannot say that the trial court's use of that figure was clearly erroneous. On the contrary, the figure used by the trial court was in our view within the range of the record.

The court continued:

*Quad Construction, Inc. v. Wm. A. Smith Contracting Co.*, 534 F.2d 1391 (10th Cir. 1976), does not limit interest in the instant case to 6%. There interest was allowed under the statute. Here interest is allowable under a judicially created exception to the interest statute. Moreover, in *Quad* there was apparently no evidence as to the benefit accruing to the wrongdoer.

The line taken by this court in *Davis Cattle Co., Inc.* is fully applicable to this case, wherein there was a wrongful withholding of the principal amount without justification for a period from October, 1977 through most of April, 1978.

So the trial court, which did not consider this issue, although it recognized that interest could be obtained, should, on remand, consider how much should be awarded as moratory interest.

Accordingly, the judgment is generally affirmed. There remains, however, the problem of assessing the interest which is owed, and this can be done by the trial court only after it has made some inquiry.

And so the cause is remanded for this purpose only.