Certiorari Granted, September 27, 2013, No. 34,300

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-097**

**Filing Date: July 31, 2013**

**Docket No. 31,439**

**ELIZABETH BEHRENS,**

>        **Plaintiff-Appellant,**

**v.**

**GATEWAY COURT, LLC,**

>        **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Law Office of Barry Green
Barry Green
Santa Fe, NM

for Appellant

Riley, Shane & Keller, P.A.
Courtenay L. Keller
Albuquerque, NM

for Appellee

## OPINION

**WECHSLER, Judge.**

**{1}**     Plaintiff Elizabeth Behrens appeals from a judgment entered in her favor against Defendant Gateway Court, LLC, following a jury trial held on the issue of damages. The jury awarded Plaintiff compensatory damages for the fair market value of personal property destroyed in a fire that occurred at her home. We hold that the district court (1) did not err in determining that Plaintiff could not seek loss of use damages for completely destroyed

property; (2) did not err in determining that Plaintiff was not entitled to punitive damages; and (3) did not abuse its discretion in not awarding prejudgment interest to Plaintiff. Accordingly, we affirm the district court on these issues. However, the district court did abuse its discretion by not utilizing the lodestar method or any objective analysis of the facts to determine Plaintiff's reasonable attorney fees. Accordingly, we reverse the district court's award of attorney fees and remand for recalculation.

**BACKGROUND**

**{2}**    Plaintiff appeals from a judgment entered in her favor against Defendant following a jury trial held on the issue of damages. The jury awarded Plaintiff $25,000 in compensatory damages. This case arose from a fire that destroyed a mobile home that Plaintiff rented from Defendant.

**{3}**    Defendant owns and operates a mobile home park. Plaintiff began renting mobile home units from Defendant in 2003, and, in 2007, she signed a new one-year lease for one of the units. On March 2, 2008, Plaintiff left her mobile home to go to a friend's home. While there, Plaintiff received a telephone call informing her that her mobile home was on fire. Plaintiff rushed back to her home and found that the fire had destroyed the home and its contents. The Alamogordo Department of Public Safety investigated the fire and determined that it was caused by an electrical short in the wiring of an old air conditioner that had been left under the porch of the mobile home when Defendant installed or had a new air conditioner installed in the mobile home.

**{4}**    Plaintiff filed a complaint against Defendant, alleging five violations of the Uniform Owner-Resident Relations Act (UORRA), NMSA 1978, Sections 47-8-1 to -52 (1975, as amended through 2007). In her complaint, Plaintiff alleged that Defendant breached several provisions of the UORRA: (a) failing to substantially comply with the requirements of the applicable minimum housing codes materially affecting health and safety; (b) failing to make repairs and do whatever was necessary to put and keep the premises in a safe condition as provided by applicable law and rules and regulations; (c) failing to keep common areas of the premises in a safe condition; (d) failing to maintain in good and safe working order and condition electrical, plumbing, heating, ventilation, air conditioning, and other facilities and appliances; and (e) refusing to provide a written rental agreement upon request. In addition to compensatory damages, Plaintiff alleged that Defendant's conduct was willful, wanton, malicious, reckless, oppressive, grossly negligent, fraudulent, in bad faith, and done with utter disregard for the rights of Plaintiff, and, therefore, she sought punitive damages.

**{5}**    Defendant originally filed a motion to dismiss Plaintiff's punitive damages claim, arguing that the complaint alleged only negligent conduct on Defendant's part in causing the fire and that the punitive damages claim was based on deceptive post-fire conduct regarding a cover up of the cause of the fire, an event that was not directly related to the harm suffered by Plaintiff in this case. Plaintiff argued that the motion to dismiss was untimely under Rule 1-012(B) NMRA because Defendant had already filed a responsive pleading to the

2

complaint, that the complaint stated a claim under New Mexico notice pleading standards, or, in the alternative, that the motion should be treated as a motion for summary judgment and that it was premature because Plaintiff was still conducting discovery regarding the cause of the fire. The district court granted the motion, dismissing Plaintiff's punitive damages claim, but did so without prejudice.

**{6}** Plaintiff filed a motion for reconsideration. Along with her motion for reconsideration, Plaintiff submitted an affidavit and curriculum vitae of a proposed expert witness, William C. Richardson, an electrical contractor and journeyman electrician, as well as deposition testimony from the owner/manager Shirley Fambrough. Plaintiff proposed that Richardson would testify that: (1) his investigation of the fire was hampered by Defendant's destruction of evidence; (2) he concluded that Defendant violated eight provisions of the New Mexico electrical code and the mobile home's electrical wiring did not conform to the specific article relating to mobile homes; (3) any licensed electrician working on the mobile home would have recognized the safety violations and would have corrected the electrical problems and prevented the fire; (4) a licensed electrician was required to install the new air conditioner under the electrical code; and (5) if a licensed electrician would have installed the new air conditioner, the electrician would have disconnected the old air conditioner and would have prevented the fire that destroyed Plaintiff's property. Plaintiff claims that Fambrough's deposition testimony showed a "cavalier attitude" toward Plaintiff's safety and compliance with the electrical code. Plaintiff cited deposition testimony from Fambrough that she (1) knew that electricians had to be licensed in New Mexico but did not believe that New Mexico law required a licensed electrician to install the new air conditioner because "it's not that complicated"; (2) did not ask anyone whether New Mexico law required a licensed electrician to install the new air conditioner; (3) did not know which of Defendant's employees installed the new air conditioner or whether they were licensed electricians; and (4) misled Plaintiff's counsel about who installed the new air conditioner and the cause of the fire and then failed to retract her statements concerning the identity of this person when she became aware of this misinformation. Plaintiff contended that these facts uncovered during discovery presented issues of material fact as to whether Defendant's actions in causing the fire were malicious, willful, reckless, wanton, fraudulent, or in bad faith. The district court denied the motion for reconsideration.

**{7}** Additionally, Defendant filed a motion for summary judgment asking that the district court grant judgment against itself on the issue of liability and stipulating to two of Plaintiff's UORRA counts. In its motion, Defendant admitted that it installed a new air conditioner on the mobile home in January 2005, it failed to disconnect the electrical wiring on the old air conditioner from the breaker, and left the old air conditioner under the porch of the mobile home. Defendant further admitted that its failure to disconnect the wiring was a breach of ordinary care and that it breached its duty to keep the premises in a safe condition and to maintain the premises in a good and safe working condition pursuant to Section 47-8-20(A)(2), (4). Defendant therefore stipulated that it was liable for damages caused by the fire that are recoverable under New Mexico law, including the fair market value of Plaintiff's personal property lost in the fire. The district court granted the motion

3

for summary judgment on liability and entered a finding of liability against Defendant. The only issue left for trial was the amount of Plaintiff's damages.

**{8}** Prior to the trial, Defendant filed an objection to Plaintiff's exhibits, arguing that Plaintiff seemed to be seeking the rental costs for temporary replacement of personal possessions and that allowing such loss of use damages would be a duplication of her damages. Defendant's motion noted that Plaintiff's proposed exhibits included print-outs from a rental company's website for renting personal property, including items such as a television, a desktop computer, a stove, a refrigerator, a dining table, chairs, a television console, a mattress set, a washer/dryer, a recliner, coffee and end tables, and a surround sound system. Defendant argued that Plaintiff's claim for loss of use damages is not supported by New Mexico law. Defendant also argued that Plaintiff had not pled or previously indicated that she would be seeking loss of use damages for her personal property contained in the mobile home, noting that the complaint only states a claim for the "loss of use of [Plaintiff's] rental home and the costs of securing comparable housing." The district court ruled in Defendant's favor, determining that loss of use damages are only available for reparable property and not wholly damaged property under New Mexico law.

**{9}** After a jury trial, the jury awarded Plaintiff $25,000 in compensatory damages. Plaintiff appeals, arguing that the district court erred in (1) denying Plaintiff's claim for loss of use damages, (2) granting Defendant's motion to dismiss Plaintiff's claim for punitive damages, (3) refusing to award prejudgment interest, and (4) determining the amount of attorney fees awarded to Plaintiff.

**LOSS OF USE DAMAGES**

**{10}** Plaintiff argues that the district court committed reversible error by denying her proposed jury instruction and claims for loss of use damages. Plaintiff notes that the uniform jury instructions and New Mexico case law allow for loss of use damages for reparable property and asserts that no distinction should be made whether the property is lost or destroyed in allowing loss of use damages. In Plaintiff's view, "the overwhelming trend is to allow loss of use damages for destroyed property." Plaintiff's arguments present a question of law that we review de novo. *See McNeill v. Burlington Res. Oil & Gas Co.*, 2008-NMSC-022, ¶ 12, 143 N.M. 740, 182 P.3d 121 (stating that the "proper measure of damages" for a claim is a matter of law, which is reviewed de novo).

**{11}** We begin by discussing current New Mexico law regarding loss of use damages. Our New Mexico appellate cases have long recognized that a plaintiff may make a claim for loss of use damages arising from the tortious conduct of a defendant where personal property is damaged, but reparable. *See Indus. Supply Co. v. Goen*, 58 N.M. 738, 744, 276 P.2d 509, 513 (1954). "The measure of damages for the loss of use sustained is the rental value of property similar to that damaged for the time reasonably necessary to make repairs[.]" *Fredenburgh v. Allied Van Lines, Inc.*, 79 N.M. 593, 600, 446 P.2d 868, 875 (1968). In *Cress v. Scott*, 117 N.M. 3, 6, 868 P.2d 648, 651 (1994), our Supreme Court held that when

4

loss of use damages are appropriate, the appropriate measure of the damages is the reasonable rental value of the substitute property, even in the absence of actual rental. Our uniform jury instructions reflect these holdings. The uniform jury instruction for loss of use states that the measure of damages is "[t]he reasonable rental value of similar property during the period reasonably required for the repair of the damaged property." UJI 13-1818 NMRA. On the other hand, UJI 13-1812 NMRA, entitled "Personal property; no salvage value" states that "[i]n determining property damages, if any, you may award the fair market value of the property immediately before the occurrence."

{12}    Regarding completely destroyed property, there is a split of authority in other jurisdictions as to whether loss of use damages are available or are limited to situations in which the property is reparable. *Compare Long v. McAllister*, 319 N.W.2d 256, 258-61 (Iowa 1982) (holding that loss of use damages are available for a totally destroyed vehicle to the same extent as available for a damaged but reparable vehicle), *with MCI Worldcom Network Servs., Inc. v. Mastec, Inc.*, 995 So. 2d 221, 223 (Fla. 2008) (stating that "loss[]of[]use damages can be an element of compensatory damages when the damage is to personal property and the damage amounts to less than total destruction of the property"). Historically, courts have distinguished the underlying rationale for denying loss of use damages when property is completely destroyed. Some courts have reasoned that compensatory damages for personal property are limited by the fair market value of the destroyed property. *See* 1 Dan B. Dobbs, *Law of Remedies* § 5:15(2) at 891 (2d ed. 1993). Other courts have reasoned that loss of use damages are not available for destroyed property because the defendant is not the proximate cause of the loss of use; the plaintiff's inability to immediately replace the property is the proximate cause. *See* 22 Am. Jur. 2d. *Damages* § 297, 271-72 (2003, current through 2012 supplement) ("Some courts have suggested that recovery for loss of use is not to be allowed where the chattel is destroyed, because it is the owner's inability to replace it—and not defendant's negligence—which is the proximate cause of the loss."). This rationale has been rejected in other jurisdictions that have abolished the historical distinction between reparable and totally destroyed property, allowing loss of use damages in both situations. *See, e.g.*, *DTS Tank Serv., Inc. v. Vanderveen*, 683 P.2d 1345, 1346 (Okla. 1984) ("There appears to be no logical or practical reason why a distinction should be drawn between cases in which the property is totally destroyed and those in which it has been injured but is repairable[.]" (internal quotation marks and citation omitted)).

{13}    Plaintiff contends that there "are no reported cases in New Mexico indicating whether loss of use damages are available when property is destroyed." However, Plaintiff overlooks our Supreme Court's decision in *Curtis v. Schwartzman Packing Co.*, 61 N.M. 305, 299 P.2d 776 (1956). In *Curtis*, the plaintiff attempted to pass a truck operated by the defendant. *Id.* at 306, 299 P.2d at 777. The defendant's truck made a left turn and collided with the plaintiff's vehicle, and the plaintiff filed a complaint seeking compensatory damages for personal injury, damage to his vehicle, and loss of use of his vehicle. *Id.* at 306-07, 299 P.2d at 777. After the jury returned a verdict in favor of the plaintiff, the defendant appealed, arguing that the testimony and a jury instruction regarding total loss, rental value,

and loss of use of the plaintiff's car led to jury confusion. *Id.* at 307-08, 299 P.2d at 777-78. The plaintiff presented evidence in which the "jury could have found total loss, less salvage, *or*, if the damage to the car was reparable, cost on account of repairs and the value of the loss of use of the car." *Id.* at 309, 299 P.2d at 778-79 (emphasis added). Reflecting the plaintiff's evidence, the court instructed the jury that

> if the car after the collision had no value except for salvage, in that event [the] plaintiff would be entitled to the difference between the reasonable market value of the car immediately before the collision and its reasonable value immediately after the collision, but that if it should be found that the plaintiff's car could have been restored to its former condition by repairs, and if the jury should find for plaintiff, then his damages should be in such amount as would afford the plaintiff the reasonable cost of repairs and a reasonable amount for the loss of use of the car during the time necessary to make the repairs.

*Id.* at 309, 299 P.2d at 779. Our Supreme Court held that the instruction was proper because "there is nothing about [the instruction] which could have led the jury to believe that it might award the plaintiff damages for practically total loss *and also* for loss of any other amount." *Id.* at 309-10, 299 P.2d at 779 (emphasis added). Implicit in this holding is that a jury cannot award damages exceeding the value of total loss when property cannot be restored to its former condition by means of making reasonable repairs.

**{14}** In *Robb v. Universal Constructors, Inc.*, 665 F.2d 998, 1001 (10th Cir. 1981), the Tenth Circuit examined *Curtis* and held that under New Mexico law "there cannot be a recovery for loss of use if the personal property is totally destroyed." Citing *Curtis* and the version of UJI 13-1818 in effect at the time, the Tenth Circuit stated that "[t]his proposition of inability to recover for loss of use where the property is destroyed is fairly well cemented into New Mexico law." *Robb*, 665 F.2d at 1001-02. The court also relied on previous committee commentary to UJI 13-1818, citing *Curtis*, which provided that:

> Damages for loss of use are not recoverable unless, in fact, it was reasonably necessary for the plaintiff to rent other property and he did, in fact, rent other property. No recovery can be made above the rental actually paid out or incurred. If the property is totally destroyed, then damages for loss of use are not recoverable. Citing [*Curtis*, 61 N.M. 305, 306, 299 P.2d 776]

*Robb*, 665 F.2d at 1002. This commentary is no longer part of UJI 13-1818 and was removed after our Supreme Court's decision in *Cress*, 117 N.M. 3, 868 P.2d 648. However, *Cress* does not conflict with the last sentence of the committee commentary and the holding in *Curtis*, recognizing that loss of use damages are not available for totally destroyed property. *Cress* held that loss of use damages may be measured by the reasonable rental value of a substitute vehicle, even in the absence of actual rental. 117 N.M. at 6, 868 P.2d

6

at 651. In so holding, our Supreme Court disavowed the committee commentary in the previous version of UJI 13-1818 discussed by the Tenth Circuit in *Robb* that required actual rental to recover loss of use. In *Cress*, our Supreme Court addressed *Curtis* and held that it "approved a jury instruction that would allow an award of damages for [(1)] total loss of a vehicle or [(2)] repair costs plus loss of use, *but not both.*" 117 N.M. at 5, 868 P.2d at 650 (emphasis added).

**{15}** Plaintiff does not directly cite or respond to Defendant's assertion that *Curtis* controls this case. Instead, Plaintiff argues that the overwhelming trend in other jurisdictions is to allow loss of use damages for destroyed property. Indeed, Plaintiff's position that loss of use damages are available for destroyed property to the same extent as reparable property does seem to be the trending modern rule. As stated in 22 American Jurisprudence, Second Edition, *Damages* § 297,

> [r]ecognizing the weakness of the distinction between the "reparable" and the "irreparable" chattel as a basis for the rule regarding damages for loss of use, recent cases have allowed recovery for loss of use even though the chattel is destroyed. In these jurisdictions, loss of use has become a separate item of damages for which compensation is allowed.

(Footnote omitted.) *See also Alaska Constr. Equip., Inc. v. Star Trucking, Inc.*, 128 P.3d 164, 168 (Alaska 2006) ("We begin by noting that the general trend in other jurisdictions has been to allow loss of use damages in these cases."). However, the "older rule," allowing loss of use damages for reparable property but not for completely destroyed property, "still has some support[.]" 22 Am. Jur. 2d *Damages supra* § 297, at 271; *see, e.g., MCI Commc'n Servs., Inc. v. CMES, Inc.*, 728 S.E.2d 649, 652 (Ga. 2012) (holding that "loss of use damages are only recoverable if the personal property was impaired but not destroyed" based on the rationale that the ceiling for damages for destroyed property is the reasonable full market value).

**{16}** Despite the trend that may be developing in other jurisdictions, this Court is bound by our Supreme Court's precedent. *See Aguilera v. Palm Harbor Homes, Inc.*, 2002-NMSC-029, ¶ 6, 132 N.M. 715, 54 P.3d 993 (stating that the Court of Appeals is bound by Supreme Court precedent); *see also State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 21, 135 N.M. 375, 89 P.3d 47 ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." (internal quotation marks and citation omitted)). Although this Court has the authority to review uniform jury instructions presenting issues not ruled upon by our Supreme Court, UJI 13-1818 is based upon and consistent with *Curtis*, which is binding on this Court. *See State ex rel. Martinez*, 2004-NMSC-009, ¶¶ 18, 20 (stating that this Court can "question uniform jury instructions that had not yet been addressed by [our Supreme] Court," but that this Court "remains bound by Supreme Court precedent" (internal quotation marks and citation omitted)). Accordingly, *Curtis* controls in this case and under New Mexico law, loss of use damages are available for reparable property but not for completely

7

destroyed property. Our Supreme Court has the exclusive province to revisit *Curtis* in light of the modern trend toward allowing damages for loss of use in cases in which personal property is destroyed and not reparable. The district court did not err in denying Plaintiff's loss of use damages claim for the destroyed personal property.

**PUNITIVE DAMAGES**

**{17}** Plaintiff next argues that the district court erred by granting Defendant's motion to dismiss Plaintiff's punitive damages claim. As an initial matter, Plaintiff contends that the motion to dismiss was actually a motion for summary judgment because the district court considered matters outside of the pleadings. As a result, Plaintiff argues that Defendant's motion should have, but did not, comply with Rule 1-056 NMRA. However, Defendant's motion to dismiss argued that punitive damages were not supported by the conduct as pled that led to the fire or subsequent post-fire conduct. Thus, Defendant contends that the district court did not rely on facts outside of the pleadings when it originally dismissed the punitive damage claim.

**{18}** Defendant also emphasizes that the district court granted the motion to dismiss without prejudice, and Plaintiff filed a motion for reconsideration after conducting discovery. Plaintiff then argued that Defendant's failure to hire a licensed electrician to install the new air conditioner supported a claim for punitive damages. This new argument at the reconsideration stage of the proceedings was based on the facts Plaintiff uncovered during discovery. Although Plaintiff contends that the district court's original grant of Defendant's motion to dismiss was in error because it should have been treated as a motion for summary judgment and that the ruling was premature because she had not finished conducting discovery on the cause of the fire, Plaintiff now concedes that she conducted discovery on her theory to support punitive damages and provided the district court "all the evidence necessary to show there were genuine issues of material fact in order to avoid summary judgment" at the time she filed her motion for reconsideration. Any error in the district court's initial grant of the motion to dismiss was therefore harmless. We do agree with Plaintiff to the extent that she argues that the correct standard for the district court to apply to the motion for reconsideration was the standard for summary judgment. *First Sw. Fin. Servs. v. Pulliam*, 1996-NMCA-032, ¶ 4, 121 N.M. 436, 912 P.2d 828 (stating that we review motions to dismiss as motions for summary judgment when the district court considered matters outside the pleadings in making its ruling).

**{19}** Generally, we review a district court's grant of summary judgment under de novo review. *Vill. of Wagon Mound v. Mora Trust*, 2003-NMCA-035, ¶ 57, 133 N.M. 373, 62 P.3d 1255. "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). Summary judgment is generally disfavored and should be used with caution. *Pollock v. State Highway & Transp. Dep't*, 1999-NMCA-083, ¶ 5, 127 N.M. 521, 984 P.2d 768.

**{20}** "The purpose of punitive damages is to punish the wrongdoer and to deter the wrongdoer and others in a similar position from such misconduct in the future." *Conant v. Rodriguez*, 113 N.M. 513, 517, 828 P.2d 425, 429 (Ct. App. 1992). Thus, "[t]o be liable for punitive damages, a wrongdoer must have some culpable mental state, and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level[.]" *Clay v. Ferrellgas, Inc.*, 118 N.M. 266, 269, 881 P.2d 11, 14 (1994) (citation omitted).

**{21}** Plaintiff argues that the facts as indicated by Richardson and Fambrough establish that Defendant's conduct in causing the fire fit the definition of willful, reckless, or wanton conduct.

> Willful conduct has been defined as the intentional doing of an act with knowledge that harm may result. Reckless conduct, by contrast, is defined as the intentional doing of an act with utter indifference to the consequences. Finally, wanton conduct is defined as the doing of an act with utter indifference to or conscious disregard for a person's rights [or] safety.

*Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 59, 131 N.M. 100, 33 P.3d 651 (alterations, internal quotation marks, and citations omitted).

**{22}** Plaintiff likens this case to *Abeita v. Northern Rio Arriba Electric Coop*, 1997-NMCA-097, 124 N.M. 97, 946 P.2d 1108. In *Abeita*, the plaintiff owned a company hired to build a garage attachment to a mobile home. *Id.* ¶ 2. The plaintiff began construction of the garage, which was to be located under a power line owned and maintained by the defendant. *Id.* ¶¶ 2-3. The defendant learned of the garage addition after two employees went to fix a transformer on the power line and noticed a concrete foundation on which the plaintiff was going to build the garage. *Id.* ¶ 3. The defendant told the mobile home owners to delay any further construction because of the danger posed by the power line until the power line could be relocated, and the mobile home owner passed on the information to the plaintiff. *Id.* ¶¶ 4, 6. The plaintiff continued to work on the garage until it was practically complete. *Id.* ¶¶ 6-7. The plaintiff presented evidence that an employee of the defendant went to the mobile home and left the site without de-energizing the line or halting construction. *Id.* ¶ 8. The parties presented conflicting evidence as to whether the defendant's employee warned the plaintiff to stop construction or whether the employee was "flippant" to the dangers. *Id.* The plaintiff continued to work on the garage and suffered fatal injuries after getting electrocuted when a metal broom handle in his hand came into contact with the power line. *Id.* ¶ 9. The jury awarded punitive damages and the defendant appealed, arguing in part that an omission or failure to act is insufficient to sustain a punitive damages award. *Id.* ¶ 35. This Court upheld the award, characterizing the defendant's conduct as the "improper distribution of electrical power." *Id.* ¶ 41.

**{23}** This case is distinguishable. The arguments in *Abeita* focused on whether the defendant's conduct was an act or omission and whether the distinction matters. In this case, the parties focus their arguments on whether an issue of material fact existed as to whether

Defendant acted or failed to act with the requisite mental state to support punitive damages. Looking at the facts most favorable to Plaintiff's position, Richardson's affidavit and Fambrough's deposition testimony establish that (1) the New Mexico electrical code required a licensed electrician to repair the old air conditioner or install the new air conditioner in the mobile home; (2) a licensed electrician would have uncovered the wiring problems on the old air conditioner and prevented the fire; (3) Fambrough did not know whether a licensed electrician was required to repair the old air conditioner or install the new air conditioner and did not take any steps to find out; and (4) Fambrough misled Plaintiff's counsel on the cause of the fire and failed to retract incorrect statements on who installed the new air conditioner. These facts do not establish that Defendant acted with knowledge that harm may occur, with utter indifference to the consequences, or with utter indifference to or conscious disregard for a person's safety. Although Richardson's affidavit created a material fact as to whether a licensed electrician was required to repair the old air conditioner or install a new air conditioner, Fambrough stated that she did not believe that a licensed electrician was needed because she viewed it as a simple task. This evidence simply does not create a material fact that Defendant's failure to hire a licensed electrician was the result of a culpable state of mind above ordinary negligence. *See Couch v. Astec Indus., Inc.*, 2002-NMCA-084, ¶ 60, 132 N.M. 631, 53 P.3d 398 (holding that "unsafe features in [the d]efendant's plant do not give rise to an inference [of] reckless[ness]" when the plaintiff did not provide any additional evidence "to show that the safety problems arose from or reflected a reckless indifference, a culpable mind, actual malice, a conscious disregard for workers' safety, or that [the d]efendant simply disregarded applicable safety features"). Indeed, Plaintiff stated in her deposition that she did not believe that Defendant intentionally set the fire or allowed any unsafe conditions in the mobile home, and there were no signs or indicators that Defendant ignored that something was wrong with Plaintiff's mobile home.

**{24}** Plaintiff argues, in addition or alternatively, that Defendant's actions after the fire evidence a culpable state of mind. In particular, Plaintiff points to evidence in the record that Fambrough "insist[ed] on several different theories on the cause of the fire," blamed a plumber for the installation, and then failed to retract her statement even after learning that the plumber did not work on the wiring of the air conditioner. However, as this Court has stated the "conduct giving rise to the punitive damages claim must be the same conduct for which actual or compensatory damages were allowed." *Gonzales v. Sansoy*, 103 N.M. 127, 129, 703 P.2d 904, 906 (Ct. App. 1984) (internal quotation marks and citation omitted). Plaintiff's compensatory damages claim was based solely on Defendant's liability for causing the fire that destroyed Plaintiff's mobile home and personal possessions. The compensatory damages claim therefore does not support a punitive damages award for post-fire conduct. Accordingly, the district court did not err in granting Defendant's motion to dismiss Plaintiff's punitive damages claim and by denying Plaintiff's motion to reconsider.

**PREJUDGMENT INTEREST**

**{25}** Plaintiff next argues that the district court erred in refusing to award prejudgment

10

interest under NMSA 1978, Section 56-8-4(B) (2004). Awarding prejudgment interest is left to the sound discretion of the district court. *See Abeita*, 1997-NMCA-097, ¶ 44. We will reverse a district court's failure to award prejudgment interest only upon an abuse of that discretion. *Martinez v. Pojoaque Gaming, Inc.*, 2011-NMCA-103, ¶ 20, 150 N.M. 629, 264 P.3d 725, *cert. denied* 2011-NMCERT-009, 269 P.3d 903. A district court does not abuse its discretion if its reasons are supported by logic and not contrary to reason. *Id.* ¶ 21.

**{26}** Prejudgment interest is governed by statute. Section 56-8-4(B) provides that

> [u]less the judgment is based on unpaid child support, the court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering, among other things:
>
> (1)     if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and
>
> (2)     if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

Section 56-8-4(B) is designed to facilitate settlement and prevent delay. *Lucero v. Aladdin Beauty Colleges Inc.*, 117 N.M. 269, 272, 871 P.2d 365, 368 (1994). Additionally, the "two factors listed in Section 56-8-4(B) are not exclusive; the [district] court should take into account all relevant equitable considerations that further the goals of Section 56-8-4(B)." *Gonzales v. Surgidev Corp.*, 120 N.M. 133, 150, 899 P.2d 576, 593 (1995).

**{27}** The district court found that Defendant "made a number of offers of judgment each of which met or exceeded the $25,000 jury award [and that] left the issue of attorney[] fees to be decided by the [district court]." Further, the district court's factual findings state that Plaintiff's damages were for household goods and personal effects and that the receipts for the items were either not retained by Plaintiff or destroyed in the fire. Further, the district court found that "[b]oth sides of the case aggressively litigated the case and there was extensive motions practice." The district court concluded that "Defendant did not unduly delay resolution of the case and awarding pre-judgment interest will not serve the interests of justice."

**{28}** Plaintiff contends that the district court incorrectly applied Section 56-8-4(B) to Defendant's settlement offers and that the offers were unreasonable and untimely. To support her position that Defendant's offers were untimely, Plaintiff states that (1) Defendant denied liability and did not offer to settle the case until nine months after Plaintiff filed suit, and (2) Defendant contested liability for two and one half years after the accident before changing its position and stipulating to liability. Plaintiff also contends that Defendant did not make reasonable settlement offers, although she acknowledges that Defendant made settlement offers of (1) $25,000, with no additional amounts for attorney fees; (2) $30,001 exclusive of costs recoverable under Rule 1-054(D)(2) NMRA; (3) $30,001; (4) $30,001

exclusive of costs and attorney fees that Defendant stated it would allow the district court to determine; and (5) $21,180 exclusive of costs and attorney fees that Defendant stated it would allow the district court to determine.

{29}    Under these circumstances, the district court did not abuse its discretion in not awarding prejudgment interest to Plaintiff.  As Plaintiff acknowledges, Defendant's settlement offers exceeded the amount that the jury ultimately awarded.  We therefore cannot say that the offers were unreasonable.  Although Plaintiff argues that if this Court reverses the district court's denial of loss of use damages or punitive damages, the amount awarded would have exceeded the settlement offers, we have affirmed the district court on these issues.  Additionally, even if the district court allowed the jury to award punitive damages or loss of use damages, it is speculative as to whether the jury would have awarded any additional damages.  We therefore cannot say that Defendant's settlement offers were unreasonable.

{30}    Regarding the timing of the settlement offers, nothing in the record indicates that Defendant's settlement offers were untimely.  Plaintiff primarily contends that the nine-month period between the filing of the suit and Defendant's settlement offer was unreasonable because Plaintiff lost all her possessions in the fire and could not afford to replace the property. While we sympathize with Plaintiff's position, the record indicates that the parties were engaged in discovery and motions practice from the time Plaintiff filed the claim through December 2009.  Additionally, the district court did not rule on Defendant's motion to dismiss Plaintiff's punitive damages claim until December 10, 2009.  Defendant made its first offer for settlement six days later on December 16, 2009.  Under these circumstances, Defendant's settlement offers were not untimely and do not indicate that the district court abused its discretion in not awarding prejudgment interest.  To hold otherwise would compel a defendant to make a settlement offer before all the facts are gathered in discovery.

**ATTORNEY FEES**

{31}    Lastly, Plaintiff argues that the district court erred as a matter of law by applying a proportional test in determining the amount of attorney fees to award her pursuant to Section 47-8-48(A).  A district court "has broad discretion in setting attorney[] fees, and an award will not be reversed unless there is an abuse of discretion." *Miller v. Johnson*, 1998-NMCA-059, ¶ 34, 125 N.M. 175, 958 P.2d 745.  When a district court makes a discretionary decision based on a misapprehension of the law, it is an abuse of discretion. *See Rio Grande Sun v. Jemez Mountains Pub. Sch. Dist.*, 2012-NMCA-091, ¶ 10, 287 P.3d 318 (stating that, although attorney fees are reviewed for an abuse of discretion, "[a] discretionary decision based on a misapprehension of the law is an abuse of discretion that must be reviewed de novo" (alteration in original) (internal quotation marks and citation omitted)), *cert. denied*, 2012-NMCERT-008, 296 P.3d 490.

{32}    Section 47-8-48(A) provides that "[i]f suit is brought by any party to the rental

agreement to enforce the terms and conditions of the rental agreement or to enforce any provisions of the [UORRA], the prevailing party shall be entitled to reasonable attorney[] fees and court costs to be assessed by the court." After trial, Plaintiff sought $70,318.09 in attorney fees. The amount sought by Plaintiff was based on a lodestar calculation provided to the district court that detailed the time spent on the case and the hourly rate charged by Plaintiff's counsel. The district court found that an "award of attorney[] fees in an amount of nearly three times the jury verdict is not reasonable in a case that involves property damage only and no broader public policy issues. Reasonable attorney[] fees for Plaintiff would be $10,000[]. The $10,000[] is subject to an offset of 50% for Defendant's successful defense of Plaintiff's non-meritorious claims." The district court based the offset of the award on Defendant's successful defense "against claims for punitive damages, emotional distress damages, and civil penalty damages."

**{33}** Plaintiff contends that the district court erred as a matter of law by failing to apply a lodestar analysis in awarding attorney fees, and particularly, by failing to consider evidence submitted by affidavit regarding the time Plaintiff's counsel spent on the case, his twenty years of experience, his hourly rate that is below the normal hourly rates charged by an attorney with the same experience, the complexity of the case, and the variety of legal issues that required extensive motions practice and research. Plaintiff is correct in asserting that the lodestar method is accepted as a method for determining attorney fees in statutory fee-shifting cases. *See Rio Grande Sun*, 2012-NMCA-091, ¶¶ 20-21 (stating that the district court abused its discretion by not applying a lodestar analysis and that "[t]he district court should utilize the lodestar method as a starting point for its calculation, and . . . tak[e] into account" any other additional relevant factors). Following a lodestar calculation, New Mexico courts also apply a variety of other factors in determining the reasonableness of attorney fees, including

(1)      the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2)      the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3)      the fee customarily charged in the locality for similar legal services;
(4)      the amount involved and the results obtained;
(5)      the time limitations imposed by the client or by the circumstances;
(6)      the nature and length of the professional relationship with the client;
(7)      the experience, reputation, and ability of the lawyer performing the services; and
(8)      whether the fee is fixed or contingent.

*In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶¶ 77-78, 140 N.M. 879,

149 P.3d 976 (omission, internal quotation marks, and citation omitted).  A court need not consider all factors or give all the factors equal weight.  *Id.* ¶ 78.

**{34}**    In its minute order awarding Plaintiff attorney fees, the district court acknowledged Plaintiff's $70,318.09 lodestar calculation that Plaintiff sought to recover in attorney fees. However, the district court declined to award the full amount of Plaintiff's request determining that the requested fees cannot be supported using a lodestar analysis under the facts in this case.  The district court gave two reasons to justify its reduction of attorney fees to $5,000.  First, the district court stated that this case involved "property damage only and no broader public policy issues."  Second, the district court considered the "amount involved and the results obtained[.]" *Lenz v. Chalamidas*, 109 N.M. 113, 118, 782 P.2d 85, 90 (1989). While an award of attorney fees is discretionary, "the exercise of that discretion must be reasonable when measured against objective standards and criteria." *Id.*  We do not believe that the district court properly exercised its discretion.

**{35}**    First, the district court failed to consider the fact that this is a case under the UORRA that embodies distinct public policy goals that must be considered when fees are awarded in accordance with that statutory scheme.  *See Rio Grande Sun*, 2012-NMCA-091, ¶ 18 (stating that the district court should have considered the public policy goals of the statute in awarding attorney fees).  The UORRA provides that its policy is to "simplify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of owner and resident, and to encourage the owners and the residents to maintain and improve the quality of housing in New Mexico."  Section 47-8-2.  The provision requiring an award of attorney fees to the prevailing party is one of the statutory remedies to encourage compliance and facilitate the public policy aspects of the UORRA.

**{36}**    Second, the district court failed to consider a lodestar analysis as the starting point for its calculation of attorney fees.  "In statutory fee-shifting cases like this one, the lodestar method . . . provides adequate fees to attorneys who undertake litigation that is socially beneficial, irrespective of the pecuniary value to the claimant."  *Rio Grande Sun*, 2012-NMCA-091, ¶ 20 (alteration, internal quotation marks, and citation omitted).  "A lodestar is determined by multiplying counsel's total hours reasonably spent on the case by a reasonable hourly rate."  *Id.* (internal quotation marks and citation omitted).  "The lodestar provides an objective basis for valuing the attorney's services."  *Id.* (alteration, internal quotation marks, and citation omitted).

**{37}**    We recognize that the district court acknowledged Plaintiff's $70,318.09 lodestar calculation, but contrary to *Rio Grande Sun*, chose to reduce attorney fees to $10,000 because of the $25,000 amount of actual damages Plaintiff incurred.  *See id.*  The district court further reduced this amount by $5,000 because Defendant successfully defended against Plaintiff's other claims for punitive damages, emotional distress damages, and civil penalty damages.  Again, under the terms of the statute, parties are entitled to reasonable attorney fees for prevailing on the various claims presented.  Thus, to the extent that Defendant prevailed against Plaintiff, it was proper for the district court to offset the attorney

14

fee award. *Lenz v. Chalamidas*, 113 N.M. 17, 19, 821 P.2d 355, 357 (1991). However, the district court must "determine the time reasonably necessary to provide the services required." *Id.* Instead of attempting to assess the time involved in each claim or defense, the district court awarded Plaintiff an arbitrary fee of $10,000 that was then reduced by $5,000 without any analysis of the actual factual circumstances and time involved to support these calculations.

**{38}** In summary, the district court abused its discretion because it did not utilize the lodestar method or any objective analysis of the facts in order to determine Plaintiff's reasonable attorney fees. We reverse the district court's award of attorney fees and remand for recalculation. The district court shall utilize the lodestar or other reasonable method as a starting point for its calculation, and it should enter findings of fact and conclusions of law based on the evidence, taking into account the factors listed in *Microsoft* and the policies underlying the UORRA. We leave the exact apportionment to the sound discretion and redetermination of the district court on remand.

**CONCLUSION**

**{39}** We hold that the district court (1) did not err in determining that Plaintiff could not seek loss of use damages for completely destroyed property; (2) did not err in determining that Plaintiff was not entitled to punitive damages; and (3) did not abuse its discretion in not awarding prejudgment interest to Plaintiff. Accordingly, we affirm the district court on these issues. However, the district court did abuse its discretion by not utilizing the lodestar method or any objective analysis of the facts to determine Plaintiff's reasonable attorney fees. Accordingly, we reverse the district court's award of attorney fees and remand for recalculation.

**{40}   IT IS SO ORDERED.**

_____
 **JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Behrens v. Gateway Court, L.L.C.*, No. 31,439**

**APPEAL AND ERROR**
Standard of Review

15

**ATTORNEYS**
Fees, General

**CIVIL PROCEDURE**
Summary Judgment

**PROPERTY**
Landlord Tenant

**REMEDIES**
Compensatory Damages
Loss of Use
Prejudgment Interest
Punitive Damages